IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-15

Filed 07 March 2023

Halifax County, Nos. 19-CVD-901; 20-CVD-448

COURTNEY RENEE AMAN, Plaintiff,

v.

ERIC A. NICHOLSON, Defendant.

Appeal by defendant from orders entered 12 August 2021 by Judge William C. Farris in District Court, Halifax County. Heard in the Court of Appeals 10 May 2022.

*Lloyd C. Smith, Jr. and Lloyd C. Smith, III, for plaintiff-appellee.*

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for defendant-appellant.*

STROUD, Chief Judge.

Defendant-Appellant ("Father") appeals from the trial court's Order on Child Custody and Child Support ("Custody Order") and Order Excluding Expert Testimony and Expert Reports ("Expert Witness Order"). Father argues the trial court erred in the Expert Witness Order under North Carolina Rule of Civil Procedure 26(b). Father also argues the trial court erred in the Custody Order by awarding Plaintiff-Appellee ("Mother") primary legal custody of the parties' child. As to the Expert Witness Order, Father identified three proposed expert witnesses on the first day of trial. Although the trial court did not abuse its discretion in sustaining

Mother's objection to two of Father's proposed expert witnesses who had not been previously disclosed to Mother, the trial court erred by excluding a report and testimony from an expert who did an evaluation as directed by a court order which was provided to Mother more than a year before trial. But based upon the trial court's findings of fact and statements regarding the primary issue addressed in that report, Father has failed to demonstrate prejudice from the exclusion of the report and witness. As to the Custody Order, Father has not challenged the trial court's findings of fact, and these findings support the trial court's conclusions of law, so we affirm.

## I.    Background

Mother and Father were married 6 June 2015. After both parties secured advanced degrees, they moved to Roanoke Rapids, North Carolina, where Mother had grown up and where she "has extensive community and family support locally." In April 2019, the parties' son, Charlie,[1] was born to the parties. Shortly after Charlie's birth, the parties separated in September 2019.

On 21 October 2019, Mother filed a complaint seeking child custody. The same day, the trial court entered a consent order for temporary child custody ("Consent Order") granting the parties temporary joint legal custody, with Mother to have temporary primary physical custody. Father was granted temporary visitation privileges which were set out in detail. The Consent Order required "[e]ach party [to]

---

[1] We continue to use the pseudonym for the parties' child as used in the proceeding below.

obtain a psychological evaluation with the results of said evaluation being immediately provided to the other party[.]" In addition, both parties were required "to continue to actively participate in individual and joint counseling at a frequency determined by the psychologist for a period of one (1) year from the date of the entry of this Order."

Approximately 10 months later, Mother filed a Motion to Modify Consent Order, alleging that the Consent Order had provided for the parties to re-evaluate the schedule one year after entry of the Consent Order, and if they were unable to agree to a modification of the terms and conditions of the Order, either party would have the right to file a motion to modify. Mother requested that the trial court modify the Consent Order by granting her primary physical and legal custody, and if she was awarded only primary physical custody, that the trial court "define[ ] what is meant by joint legal custody." After "each Judge in the Sixth Judicial District had recused himself or herself" from hearing this case, on 18 February 2021 the case was scheduled by special commission before a judge from another district for hearing on the 28th, 29th, and 30th of April 2021.[2]

On 28 April 2021, the first day of trial, Father's counsel provided Mother's counsel a list of three potential expert witnesses he may call to testify, along with the

---

[2] The reason why every judge in the Sixth Judicial District was recused from this case is not clearly stated in the Record. The only reference to this mass-recusal is the single finding from the Expert Witness Order.

CVs of each witness and written reports from two of the experts. Father had noted he was not sure if he would need to present testimony from the proposed witnesses, depending upon Mother's evidence. Mother presented her evidence on April 28 and 29, and when Father began presentation of his evidence, Mother's counsel raised an objection based upon North Carolina Rule of Civil Procedure 26(b)(4)(a)(1) to Father's expert witnesses.

Two of Father's three proposed expert witnesses, Dr. Avram H. Mack and Dr. Roger B. Moore, Jr. had prepared reports. The third expert, Dr. Evans E. Harrell, had been counseling Father, as required by the Consent Order, from about October 2019 up to the date of trial. Father's counsel had also provided a report from Dr. Varley to Mother's counsel, but Father did not intend to call Dr. Varley to testify. Dr. Moore had conducted Father's psychological evaluation, as directed by the Consent Order, in December 2019, and Mother received a copy of his report at that time. Father's counsel noted that Dr. Harrell is "an ongoing treater" and "really more of a fact witness but he's an expert in the sense that he's a Ph.D."

The trial court and counsel for both parties then engaged in an extensive colloquy regarding Mother's objection. Although Mother objected to evidence from Dr. Mack and Dr. Harrell, it is not entirely clear Mother was objecting to Dr. Moore's report or testimony. Mother's counsel acknowledged she had received a copy of Dr. Moore's report in December of 2019, arguing, based upon *Myers v. Myers*, 269 N.C. App. 237, 837 S.E.2d 443 (2020), "from a selfish perspective, my response would be .

. . we'd like it stricken *except for the one that's been disclosed to us, and we obviously have no problem with that,*" (emphasis added), referring to Dr. Moore's report. Mother's counsel then noted that "we would offer a second position[,]" arguing that since Father's income was far higher than Mother's income, "he ought to pay for us to be able to depose these witnesses," especially since one of the expert witnesses, Dr. Varley, "criticizes one of these other experts and says he's wrong." Mother argued that she could not have a fair hearing "if we don't have a chance to at least depose Dr. Mack and Dr. Varley, who is the only person that talked to Dr. Harrell, and all three of the other reports that were given, and Dr. Harrell, psychologist." Dr. Harrell "was actually giving family therapy to these two people[.]" Mother's counsel noted that Father was "conveniently not calling" Dr. Varley because he was the only psychologist who "says [Father's] got a problem." The trial court then rendered its ruling allowing Mother's motion to exclude all Father's expert witnesses, including Dr. Moore, and Father began presenting his evidence.

On or about 10 August 2021, the trial court entered the written Expert Witness Order addressing Mother's objection to Father's proposed expert witnesses. The trial court found that Dr. Moore's report had been provided to Mother's attorney on 5 December 2019, in accord with the Consent Order, and Father produced this same report for use at the trial. The trial court also found "[t]his was the first time that [Father] disclosed his intent to call any expert witness for trial or to attempt to introduce any expert witness report." Father never gave [Mother] "any indication by

any means that he intended to introduce any psychological evaluations at the trial[.]" The trial court then, "as a Mixed Findings of Fact and Conclusions of Law determines that it has discretion under N.C.G.S. Section 1A-1, Rule 26(b)(4)(a)(1) to impose sanctions for failure of a party to voluntarily disclose the existence of expert witnesses and expert witnesses reports that he or she intends to introduce at trial[,]" and that Father's delay in disclosing his experts and their reports gave him "an unfair tactical advantage" under Rule 26 of Civil Procedure.

Then, the trial court excluded all three expert witnesses and their reports after concluding:

> 1.    N.C.G.S. Section lA-1, Rule 26(b)(4)(a)(l) does require advanced disclosure and notice of expert witnesses who will testify at trial and their reports even without a discovery request, discovery plan, or court order.
>
> 2.    The Court has the inherent authority to impose sanctions for failure to disclose sufficiently in advance of trial the identity of expert witnesses and the proposed use of their reports.
>
> 3.    The Court also in its discretion can allow or exclude said evidence or impose other sanctions for failure to disclose.
>
> 4.    The Court has exercised its discretion in this matter and determined that the testimony and reports should be excluded as failure to do so would further delay this action and the [ ] Father offered no justification acceptable to the court for his failure to give sufficient advance notice of the proposed expert witnesses and documentation.
>
> 5.    As a Mixed Findings of Fact and Conclusions

of Law, the late disclosure of said experts and their reports
gave the [ ] Father "an unfair tactical advantage".

The trial proceeded and the Custody Order was entered on or about 4 August 2021.

Father filed notice of appeal from both the Custody Order and Expert Witness Order to this Court 2 September 2021. While settling the Record on Appeal, Mother "served objections to the proposed Record on Appeal to the [Father] on the 13th day of December, 2021 and served a copy of said objection on the undersigned Judge on the 15th day of December, 2021." The trial court held a judicial settlement conference and excluded Father's proposed expert witness reports–including Dr. Moore's report–from the Record on Appeal. The trial court concluded Father's proposed record evidence "[was] never submitted for consideration to the undersigned Judge, [was] never admitted into evidence or attempted to be admitted into evidence nor was there any offer of proof tendered regarding said" evidence. Father filed a petition for writ of certiorari in this Court, 18 January 2022, to preserve his challenge to the trial court's settlement of the Record on Appeal.

## II. Appellant-Father's Petition for Writ of Certiorari

We first address Father's Petition for Writ of Certiorari ("PWC"). Father argues the trial court erred when settling the Record on Appeal. Father argues the order settling the Record "does not follow the requirements of Rule 11(c) of the North Carolina Rules of Appellate Procedure by improperly excluding documents that are properly included in the Record." We first note there are two orders on appeal: the

Custody Order and the Expert Witness Order. Most of Father's arguments on appeal address the Expert Witness Order. Father's notice of appeal does not address the trial court's order settling the Record. We grant Father's PWC because the trial court incorrectly applied Rule 11(c) of Appellate Procedure.

After the trial and after filing notice of appeal, Father's counsel included the CVs from all three proposed experts and the reports from two of the experts in "a proposed record and exhibit supplement[.]" Mother objected, and the trial court held a judicial settlement conference. After this conference, the trial court entered an order on or about 22 December 2021 and found the following:

> 2. The Appellant properly served the Appellee a proposed Record on Appeal on the 15th Day of November, 2021.
>
> 3. The Appellee properly served objections to the proposed Record on Appeal to the Appellant on the 13th day of December, 2021 and served a copy of said objection on the undersigned Judge on the 15th day of December, 2021.
>
> 4. The undersigned Judge gave notice of this hearing to which the parties consented . . . .
>
> 5. The Appellee is now requesting that the Court settle the Record on Appeal, specifically as it refers to Appellee's objection to the inclusion of certain documents, more specifically described in the Appellant's Rule 9(d)(2) document Exhibit Supplemental to the Printed Record on Appeal, specifically as identified as [Father]'s Experts Materials Excluded by the Trial Court.
>
> 6. At the trial of this action, the undersigned Judge entered an Order excluding expert testimony and

expert reports.

. . . .

8. In said Order, the undersigned Judge determined that the Appellant, through his counsel at trial on the morning of the first day of trial, April 28, 2021, delivered to the attorney for the Appellee, a list entitled "Possible Expert Trial Witnesses Disclosure" disclosing the identify of three potential expert witnesses with their expert reports that might be introduced and the curriculum vitae of the three expert witnesses.

9. The Appellee, through counsel, objected to the introduction of said expert reports or the testimony of said witnesses and the court after hearing arguments in his discretion excluded said expert reports and sustained the objection to said experts testifying.

10. *At no time during the trial were the* [Father]*'s Expert Materials submitted for consideration to the undersigned Judge.*

11. *At no time during the trial were the* [Father]*'s Expert Materials admitted into evidence or attempted to be admitted into evidence.*

12. *At no time during the trial was an offer of proof tendered regarding said* [Father]*'s Expert Materials.*

13. The Appellee argues that Rule 11(c) of the North Carolina Rules of Appellate Procedure that states "[ ] provided that any item not filed, served, submitted for consideration, or admitted, or for which no offer of proof was tendered, shall not be included" controls and that said documents should be excluded from the Record on Appeal.

(Emphasis added.)

The trial court then concluded "as a matter of law that:"

1. The [Father]'s Documentary Exhibits entitled "[Father]'s Expert Materials Excluded by the Trial Court" were never submitted for consideration to the undersigned Judge, were never admitted into evidence or attempted to be admitted into evidence nor was there any offer of proof tendered regarding said [Father]'s Expert Materials excluded by the trial court.

2. Under Rule 11(c) as said documents were not submitted for consideration or admitted into evidence or no offer of proof was tendered, they should not be included in the Record on Appeal.

Father and Mother argue about how to interpret Rule 11 of Appellate Procedure as it applies to Father's "Expert Materials Excluded by the Trial Court." At the time the trial court judicially settled the Record on Appeal and denied Father the inclusion of the proposed expert reports, Rule 11(c) stated:

> Amendments or objections to the proposed record on appeal shall be set out in a separate paper and shall specify any item(s) for which an objection is based on the contention that the item was not *filed, served, submitted for consideration, admitted, **or** made the subject of an offer of proof*, or that the content of a statement or narration is factually inaccurate. . . .
>
> . . . If a party requests that an item be included in the record on appeal but not all other parties to the appeal agree to its inclusion, then that item shall not be included in the printed record on appeal, but shall be filed by the appellant with the printed record on appeal in a volume captioned "Rule 11(c) Supplement to the Printed Record on Appeal," . . . provided that *any item not filed, served, submitted for consideration, **or** admitted, **or** for which no offer of proof was tendered*, shall not be included. . . .
>
> . . . .
>
> The functions of the judge in the settlement of the record

- 10 -

> on appeal are to determine whether a statement permitted by these rules is not factually accurate, to settle narrations of proceedings under Rule 9(c)(1), and to determine whether the record accurately reflects *material filed, served, submitted for consideration, admitted, **or** made the subject of an offer of proof*, but not to decide whether material desired in the record by either party is relevant to the issues on appeal, non-duplicative, or otherwise suited for inclusion in the record on appeal.

N.C. R. App. P. 11(c) (emphasis added).

Again, we first note that Father has appealed from the Expert Witness Order, and it is abundantly clear from the transcript that Father submitted the information regarding the proposed expert witnesses and their reports to Mother's counsel and to the trial court. The arguments of counsel for both parties addressed details regarding each proposed witness and why each should or should not be allowed to testify. This is not a case involving materials which were never addressed at the trial court level, and one of the orders on appeal is directed specifically to the exclusion of those witnesses. And for purposes of the Record on Appeal, at this point we are considering only whether the materials regarding the experts should be included in the Rule 11(c) supplement, not whether the trial court erred by sustaining Mother's objection to use of the evidence at trial based upon North Carolina Rule of Civil Procedure 26(b).

Father argues Rule 11(c) defines five disjunctive categories and should evidence "fit[ ] within any of these categories, then it must be included in the record on appeal submitted to the appellate court." Mother argues this language is broken into three parts, and the first three categories are in fact one. Under Father's reading

of the Rule, if evidence is (1) filed, (2) served, (3) submitted for consideration, (4) admitted, *or* (5) made the subject of an offer of proof, then it must be included in the record. Mother argues the additional "or" in the second recitation of categories in Rule 11(c) results in three categories of evidence: (1) evidence filed, served, and submitted for consideration, (2) evidence admitted, or (3) evidence made the subject of an offer of proof. Under Mother's reading of Rule 11(c), evidence must be filed, served, *and* submitted for consideration to meet the first category of material for inclusion in the record.

This issue presents an issue of statutory construction, and we review this type of issue *de novo*:

> [I]f the trial court's ruling depends upon interpretation of a statute, we review the ruling *de novo*. *Moore v. Proper,* 366 N.C. 25, 30, 726 S.E.2d 812, 817 (2012) ("[W]hen a trial court's determination relies on statutory interpretation, our review is de novo because those matters of statutory interpretation necessarily present questions of law.").

*Myers v. Myers*, 269 N.C. App. 237, 241, 837 S.E.2d 443, 448 (2020).

> "When the language of a statute is clear and without ambiguity, 'there is no room for judicial construction,' and the statute must be given effect in accordance with its plain and definite meaning." *Avco Financial Services v. Isbell*, 67 N.C. App. 341, 343, 312 S.E.2d 707, 708 (1984) (quoting *Williams v. Williams*, 299 N.C. 174, 180, 261 S.E.2d 849, 854 (1980)). However, if a literal reading of the statutory language "yields absurd results . . . or contravenes clearly expressed legislative intent, 'the reason and purpose of the law shall control and the strict letter thereof shall be disregarded.'" *Id.* (quoting *State v. Barksdale*, 181 N.C.

621, 625, 107 S.E. 505, 507 (1921)); *see also Kaminsky v. Sebile*, 140 N.C. App. 71, 76, 535 S.E.2d 109, 112–13 (2000).

*Griffith v. North Carolina Dept. of Correction*, 210 N.C. App. 544, 559, 709 S.E.2d 412, 423 (2011). Based upon the plain language of Rule 11(c) and applying basic rules of grammar and punctuation, Father's interpretation is correct. Rule 11(c) repeatedly refers to materials that were or were not "filed, served, submitted for consideration, admitted, *or* made the subject of an offer of proof." (Emphasis added.) "[T]he disjunctive [conjunction] 'or' is used to indicate a clear alternative. The second alternative is not a part of the first, and its provisions cannot be read into the first." *In re Duckett's Claim,* 271 N.C. 430, 437, 156 S.E.2d 838, 844 (1967); *see also Smith v. Bumgarner*, 115 N.C. App. 149, 152, 443 S.E.2d 744, 745-46 (1994) ("Those persons who may bring a proceeding pursuant to G.S. § 49-14, *et seq.*, are specifically enumerated in G.S. § 49-16, separated by commas and the disjunctive 'or.' The provision is not ambiguous and its natural and ordinary meaning indicates that either of the listed persons may bring an action pursuant to G.S. § 49-14."). Once, Rule 11(c) uses the phrase: "any item not filed, served, submitted for consideration, *or* admitted, *or* for which no offer of proof was tendered, shall not be included[.]" (Emphasis added.) The additional "or" in this phrase does not change the meaning; the second "or" maintains the parallel structure of the list. The first four verbs on the list are introduced by the word "not," addressing any item not filed, not served, not submitted for consideration, or not admitted. But "not" cannot correctly introduce

- 13 -

the last item "for which no offer of proof was tendered." The additional "or" maintains the grammatical structure of the sentence: "or for which no offer of proof was tendered." Mother's interpretation of Rule 11(c) focuses on the phrase with the additional "or," and Mother asserts this additional "or" results in three categories of evidence. But we must consider the entire statute in context. In three other phrases within the same subsection, five categories of material are described and those phrases do not include the additional "or." The phrase with the additional "or" has the same meaning as the other three phrases.

Mother's reading of Rule 11(c) is not supported by the plain language of Rule 11. Thus, if Father's proposed "Expert Materials Excluded by the Trial Court" fall within any of the five categories, they should have been included in a Rule 11(c) Supplement by the trial court. This interpretation is also consistent with prior cases from this Court. *See Morris v. Southeastern Orthopedics Sports Medicine and Shoulder Center, P.A.*, 199 N.C. App. 425, 432, 681 S.E.2d 840, 845 (2009) ("*The PEWD was served on defendants*, bringing it within the scope of documents allowed to be included in a Rule 11(c) Supplement to the Record on Appeal. N.C. R. App. P. 11(c) ('[A]ny item not filed, served, submitted for consideration, admitted, or for which no offer of proof was tendered, shall not be included.'). Accordingly, we grant plaintiff's petition for writ of certiorari as to the PEWD and will consider it as part of our review." (emphasis added)).

In settling the Record on Appeal, the trial court erred by considering only the

latter three categories of information, as indicated by the finding that Father did not make an offer of proof of the expert testimony and reports, and not including in the Rule 11(c) Supplement information that had been "served" upon Mother. "[S]ervice may be made as follows: . . . [u]pon a party's attorney of record . . . [b]y delivering a copy to the attorney. Delivery of a copy . . . means handing it to the attorney[.]" N.C. Gen. Stat. § 1A-1, Rule 5(b)(1) (2021). It is apparent from the transcript all materials were "served" upon Mother's counsel, and one portion of the evidence, Dr. Moore's report, had been served upon Mother over a year earlier in compliance with the Consent Order. In addition, Father "submitted for consideration" the materials regarding the expert witnesses, including their CVs and reports, and presented oral summaries of the testimony each witness would offer. The trial court sustained Mother's objection and did not consider the materials, but Father did "submit" them for consideration. Father argued Dr. Harrell would constitute "more of a fact witness" and "he will be speaking to his ongoing counseling with [Father]." Dr. Mack "did an evaluation of Dr. Nicholson with his son and read reports[,] and . . . he's going to offer an opinion . . . about [Father's] parenting skills and his ability to take care of [Charlie]"; and as to Dr. Moore's report, as we have already noted, the report was based upon a court-ordered evaluation and was served on Mother 17 months earlier. Father's counsel additionally argued that these expert witnesses and reports would be used to rebut Mother's case because Father "didn't know that [Mother] [was] going to, as it turns out, attack [Father]'s ability to take care of [Charlie.]"

Father "served" the materials regarding proposed expert witnesses and their reports upon Mother at trial; the issue for purposes of North Carolina Rule of Appellate Procedure 11(c) is not whether this service was timely for purposes of North Carolina Rule of Civil Procedure 26(b), but only whether it was served. Counsel for both parties presented arguments and the trial court conducted an extensive colloquy regarding the information each expert witness would address. In addition, Father appealed from the Expert Witness Order, and on appeal we must consider the parties' arguments regarding that Order, not just the Custody Order. Because the trial court erred in settling the Record by excluding Father's proposed expert materials which were served on Mother at the trial as directed by North Carolina Rule of Appellate Procedure 11(c), we grant Father's PWC, reverse the trial court's order settling the Record on appeal, and thus include the expert witness materials attached to his PWC as a Rule 11(c) supplement to the Record on Appeal.

## III.    Expert Witness Order

Father appeals from both the Expert Witness Order and the Custody Order. We begin with the Expert Witness Order.

## A. Standard of Review

Father first argues the trial court erroneously excluded all his expert testimony and reports under North Carolina Rule of Civil Procedure 26(b). This Court has recently addressed a similar issue in *Myers v. Myers*:

> [Father]'s first issue arises from the trial court's exclusion

of testimony of [his] expert witness based upon [his] failure to disclose the identity of the witness[es] sufficiently in advance of trial. As a general rule, we review the trial court's rulings regarding discovery for abuse of discretion. *See Miller v. Forsyth Mem'l Hosp., Inc.*, 174 N.C. App. 619, 620, 625 S.E.2d 115, 116 (2005) ("It is well established that orders regarding discovery matters are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of that discretion. In addition, the appellant must show not only that the trial court erred, but that prejudice resulted from that error. This Court will not presume prejudice." (citations and quotation marks omitted)). "An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998).

*Myers*, 269 N.C. App. at 240, 837 S.E.2d at 447-48. Father argues "the trial court erred [both] as a matter of law and otherwise abused its discretion under North Carolina Rule of Civil Procedure 26 in precluding Father from presenting any evidence or testimony from his expert witnesses." (Capitalization altered.)

**B. Analysis**

Father's arguments address the trial court's application of North Carolina Rule of Civil Procedure 26. *See* N.C. Gen. Stat. § 1A-1, Rule 26 (2021). Father argues "[t]he trial court erred as a matter of law in excluding" his experts and their reports due to the fact the trial was scheduled with less than 120 days' notice, and under Rule 26 "[t]here was no 'unfair tactical advantage' in the provision of Dr. Moore's report when Mother had had possession of that report for over a year prior to the trial date." Mother argues Father failed to preserve this issue for appellate review because he

failed to comply with North Carolina Rule of Civil Procedure 43 by failing to make a specific offer of proof as to the significance of the evidence. *See* N.C. Gen. Stat. § 1A-1, Rule 43 (2021) ("[I]f an objection to a question propounded to a witness is sustained by the court, the court on request of the examining attorney shall order a record made of the answer the witness would have given. . . . In action tried without a jury the same procedure may be followed[.]"); *Currence v. Hardin*, 296 N.C. 95, 99-100, 249 S.E.2d 387, 390 (1978) (In order to preserve the exclusion of evidence for appellate review, "[u]nless the significance of the evidence is obvious from the record, counsel offering the evidence must make a specific offer of what he expects to prove by the answer of his witness."). She also argues, even had Father complied with Rule 43, "the trial court did not abuse its discretion in excluding [Father's] expert testimony and expert reports" because Father's "argument is premised upon an improper application of" North Carolina Rule of Civil Procedure 26. (Capitalization altered.)

In the Expert Witness Order, the trial court based its exclusion of Father's expert evidence upon Rule 26(b)(4)(a)(1). Father argues Rule 26(f) establishes "an important exception to the timing requirements for disclosure of written reports" under Rule 26(b)(4)(a)(1).[3] Rule 26(b)(4) states in relevant part:

---

[3] Father argues "reports are to be served '[a]t least 90 days before the date set for trial or the case to be ready for trial[.]' N.C. R. Civ. P. 26(f)(1)[,]" and "'[t]he time requirements of this sub-subsection shall not apply **if all parties had less than 120-days notice of the trial date.**' N.C. R. Civ. P. 26(f)(2) (emphasis added)." We note that this precise language is found in Rule 26(b)(4)(f). Rule 26(f) addresses discovery meetings following the filing of a complaint. Considering Rule 26's lack of clarity,

(4) Trial Preparation; Discovery of Experts.--Discovery of facts known and opinions held by experts, that are otherwise discoverable under the provisions of subdivision (1) of this subsection and acquired or developed in anticipation of litigation or for trial, may be obtained only as provided by this subdivision:

a. 1. In general.--In order to provide openness and avoid unfair tactical advantage in the presentation of a case at trial, a party must disclose to the other parties in accordance with this subdivision the identity of any witness it may use at trial to present evidence . . . .

2. Witnesses providing a written report.--The parties shall have the option, in connection with the disclosures required by this subdivision, of accompanying the disclosure with a written report prepared and signed by the witness if the witness is one retained or specifically employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. . . .

. . . .

f. Time to disclose expert witness testimony.--Parties agreeing to the submission of written reports pursuant to sub-sub-subdivision 2. of sub-subdivision a. of this subdivision or parties otherwise seeking to obtain disclosure as set forth herein by interrogatory shall, unless otherwise stipulated, set by scheduling order or otherwise ordered by the court, serve such written report or in the case of no agreement on the submission of written reports, interrogatory:

1. At least 90 days before the date set for trial or the

---

we do not fault Father for incorrectly citing the Rule, for as the trial judge in *Myers* noted, "I think . . . [R]ule [26] is clear as mud." *Myers*, 269 N.C. App. at 247, 837 S.E.2d at 451-52. This poorly worded section of the Rule actually refers back to "sub-sub-subdivision 2. of sub-subdivision a. of this subdivision." *See* N.C. R. Civ. P. 26(b)(4)(f).

case to be ready for trial; or

2. If the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under sub-subdivision a. of this subdivision, within 30 days after the other party's disclosure. If a party fails to provide timely disclosure under this rule, the court may, upon motion, take such action as it deems just, including ordering that the party may not present at trial the expert witness for whom disclosure was not timely made.

The time requirements of this sub-subdivision shall not apply if all parties had less than 120-days' notice of the trial date.

N.C. Gen. Stat. § 1A-1, Rule 26.

Father cites our decision in *Myers* for the proposition that "[t]his Court has already held that Rule 26 has no explicit time frame by which a party must give advance notice of a party's expert witnesses." That much is true, and this lack of an explicit time frame is the source of the problem. We note the Federal Rules of Civil Procedure, upon which North Carolina's rules were originally based, upon adoption in 1967, have since been amended to clarify this and other issues under Rule 26, but North Carolina's Rule 26 no longer mirrors Federal Rule 26. *See Sutton v. Duke*, 277 N.C. 94, 99, 176 S.E.2d 161, 164 (1970) ("The North Carolina Rules of Civil Procedure are modeled after the federal rules. 48 N.C.L.Rev. 636 (1970). In most instances they are verbatim copies with the same enumerations. Sizemore, 5 Wake Forest Intra.L.Rev. 1 (1969)."); *Wickes Corp. v. Hodge*, 7 N.C. App. 529, 530, 172 S.E.2d 890, 891 (1970) ("The 1967 General Assembly . . .enacted a new code of civil procedure . .

. the effective date of the act [was] 1 January 1970[.]"). We addressed the changes to

Rule 26 in detail in *Myers*:

> The General Assembly has amended the rule of procedure in civil cases for discovery of information about another party's expert witness. North [Carolina] Rule of Civil Procedure 26(b)(4) has largely been unchanged since 1975. With the amendments made by House Bill 376, S.L. 2015-153, the rule updates the methods of disclosing and deposing experts and implements some explicit work-product-type protections. The Rule now looks more like the corresponding provisions in Federal Rule of Civil Procedure 26 (after that Rule's own significant round of changes in 2010).

*Myers*, 269 N.C. App. at 243, 837 S.E.2d at 449 (quoting Ann Anderson, *North*

*Carolina's Expert Witness Discovery Rule – Changes and Clarifications*, On the Civil

Side: A UNC School of Government Blog (4 Sept. 2015, 5:00 AM),

https://civil.sog.unc.edu/north-carolinas-expert-witness-discovery-rule-changes-and-

clarifications/).

> As Professor Anderson's blog post correctly noted, subsection (b)(4)(a)(1) which requires disclosure is now more similar to Federal Rule of Civil Procedure 26. In addition, other amendments to Rule 26 adopted at the same time also made North Carolina's Rule 26 more similar to its federal counterpart. But since North Carolina has not adopted many of the other related provisions of the Federal Rules, the similarity is somewhat superficial. Regarding the 2015 amendments to Rule 26, Shuford's North Carolina Civil Practice and Procedure notes that North Carolina Rule 26 and Federal Rule 26 both deal "with substantive aspects of discovery," but they are
>> fundamentally different in their respective approaches. Since 1993, when Federal Rule 26 was substantively rewritten, the discovery

procedures were substantially changed to establish what amounts, through mandatory discovery requirements, to standing interrogatories and requests for disclosure and production. The matter must be produced no later than 14 days before a scheduled conference to formulate a joint written discovery plan. While the North Carolina Rule now lays out the framework for a discovery plan and conference to be crea[t]ed, it is not mandatory unless one of the parties requests to have a discovery meeting.

Alan D. Woodlief, Jr., *Shuford North Carolina Civil Practice and Procedure* § 26:28 (2018).

Because the 2015 Amendments to Rule 26 incorporated the concept of required disclosure of expert witnesses but set no procedure or timing for the disclosure, Rule 26(b[)](4)(a)(1) is ambiguous. The trial court appreciated this ambiguity, noting, "I think the rule is clear as mud." We must therefore review the trial court's interpretation of the 2015 Amendment to Rule 26 *de novo*. *See Moore v. Proper*, 366 N.C. at 30, 726 S.E.2d at 817.

*Id.* at 247, 837 S.E.2d at 451-52.

Ultimately, we concluded in *Myers* that while Rule 26 sets no time frame for the disclosure of expert witnesses: "Upon *de novo* review of Rule 26(b)(4)(a)(1), we hold the Rule *does require advance disclosure of expert witnesses* who will testify at trial, even without a discovery request, discovery plan, or court order."[4] *Id.* at 256, 837 S.E.2d at 456-57 (emphasis added). Additionally, "[t]he trial court [has] inherent authority to impose a sanction for failure to disclose sufficiently in advance of trial.

---

[4] Our holding the rule applies even absent discovery requests is important in the case at bar, as the trial court found "[n]either party has served any written discovery on the opposing party and neither party had, by written discovery, requested the identity of any expert witnesses."

The trial court *has discretion to allow or to exclude* [an expert]'s evidence or to impose another sanction for the failure to disclose[.]" *Id.* at 256, 837 S.E.2d at 457 (emphasis added).

Our discussion in *Myers* also concluded, after a comparison with the Federal Rules of Civil Procedure:

> Since North Carolina General Statute § 1A-1, Rule 26(b)(4)(a)(1) does not include a timeframe for voluntary disclosure and the North Carolina Rules of Civil Procedure do not include the other related rule provisions which give Federal Rule 26(a)(2)(D) clear time requirements and the Federal Rule 37 provisions which give it "teeth," North Carolina's Rule 26(b)(4)(a)(1) leaves the matter of a party's compliance and any sanction or remedy for noncompliance within the trial court's inherent authority and discretion. The guiding purpose of disclosure in Rule 26(b)(4)(a)(1) is "to provide openness and avoid unfair tactical advantage in the presentation of a case at trial[.]" N.C. Gen. Stat. § 1A-1, Rule 26(b)(4)(a)(1). Thus, the trial court must make a discretionary determination of *whether* [Father]*'s failure to disclose the expert sufficiently in advance of the trial gave* [*him*] *an "unfair tactical advantage" at trial or defeated the purpose of "providing openness" as contemplated by Rule 26(b).*

*Id.* at 255, 837 S.E.2d at 456 (emphasis added). In exercising its discretion, the trial court is not *required* to exclude evidence should a party fail to disclose sufficiently in advance experts that may testify at trial, but it may do so. *See id.* at 254-56, 837 S.E.2d at 456-57.

As to the "important exception" carved out of Rule 26(b)(4)(a)(1) by subdivision 26(b)(4)(f), "Rule 26(b)(4)(f) sets a time for disclosure of testifying expert witnesses *if*

the parties have agreed to 'submission of written reports pursuant to sub-sub-subdivision 2. of sub-subdivision a. of this subdivision' *or* by interrogatories. The time for disclosure may also be set by stipulation, discovery plan, or court order." *Myers*, 269 N.C. App. at 249 n.7, 837 S.E.2d at 452 n.7 (emphasis in original) (citations omitted). Rule 26(b)(4)(f) therefore has no application "unless the parties have agreed to exchange reports from expert witnesses, have stipulated to a schedule or there is a discovery plan or order setting times for disclosure," and as a result "Rule 26(b)(4)(a)(1) puts the parties in the difficult position of being bound by a vague requirement to disclose expert witnesses without any particular time or method set for making that disclosure." *Id.* at 249, 837 S.E.2d at 453. In this case there was no agreement, stipulation, discovery plan, or order setting disclosure timelines, so Rule 26(b)(4)(f) is inapplicable here. *See id.*

The trial court was therefore vested with discretion to (1) exclude Father's expert testimony and reports and (2) impose any appropriate sanctions for failure to comply with Rule 26. When making its "discretionary determination of whether [Father] fail[ed] to disclose the expert[s] sufficiently in advance of the trial[,]" the court was required to determine whether Father's delay "gave [him] an 'unfair tactical advantage' at trial or defeated the purpose of 'providing openness' as contemplated by Rule 26(b)." *Id.* at 255, 837 S.E.2d at 456.

### 1. *Exclusion of Dr. Mack's Report and Testimony and Dr. Harrell's Testimony*

Dr. Mack's potential testimony and report and Dr. Harrell's potential testimony were both first disclosed by Father on the first day of trial. The trial court did not abuse its discretion in excluding this evidence.

The trial court made the following relevant findings of fact:

> 8.   This was the first time that the [ ] Father disclosed his intent to call *any expert witnesses* for trial or to attempt to introduce *any expert witness report*.
>
> . . . .
>
> 10.   The [ ] Father never gave the [ ] Mother or [her] attorney notice of his intent to introduce *any* psychological evaluation . . . .
>
> 11.   The attorney for the [ ] Mother objected to the testimony of these potential expert witnesses and to the introduction of any psychological evaluation or other reports prepared by said experts stating that *the same had not been supplied to him within a reasonable time*.
>
> 12.   The [ ] Father, through counsel, admitted that *he had not previously produced the list of expert witnesses . . .* other than the one that was required by the Temporary Custody Order stated above. . . .
>
> 13.   The [ ] Father *had never given the* [ ] *Mother any indication by any means that he intended to introduce any psychological evaluations* at the trial [of] this action.
>
> 14.   The attorney for the [ ] Mother requested that the Court consider sanctions in this matter by continuing this trial . . . or that the Court exclude said testimony and reports.
>
> . . . .
>
> 16.   The Court, as a Mixed Findings of Fact and Conclusions of Law determines that it has discretion under

N.C.G.S. Section 1A-1, Rule 26(b)(4)(a)(1) to impose sanctions for failure of a party to voluntarily disclose the existence of expert witnesses and expert witnesses reports that he or she intends to introduce at trial.

17.   The [ ] Father's failure to disclose the expert witnesses' identities and reports sufficiently in advance of the trial *gave the* [ ] *Father "an unfair tactical advantage" at trial or at least defeated the purpose of "providing openness" as contemplated by N.C.G.S. Section 1A-1, Rule 26(b).*

18.   . . . the Court must either continue this matter . . . or . . . exclude the proposed witnesses and their reports.

19.   Given that the child custody portion of this case has been pending since the 21st day of October 2019 and that this matter has been scheduled for trial before the undersigned Judge since the 18th day of February 2021, the Court cannot find any justification for not excluding said expert testimony and documentation in its discretion as allowed under N.C.G.S. Section 1A-1, Rule 26(a) as the [ ] Mother has been placed in an "unfair tactical position" by not having the opportunity to depose said expert witnesses and review their reports.   Moreover, this case primarily involves custody and visitation issues which need to be resolved.

(Emphasis added.)  Then, based upon these findings the trial court concluded:

1.   N.C.G.S. Section 1A-1, Rule 26(b)(4)(a)(1) does require advanced disclosure of expert witnesses who will testify at trial and their reports even without a discovery request, discovery plan, or court order.

2.   The Court has the inherent authority to impose sanctions for failure to disclose sufficiently in advance of trial the identity of expert witnesses and the proposed use of their reports.

3.   The Court also in its discretion can allow or

exclude said evidence or impose other sanctions for failure to disclose.

> 4.  The Court has exercised its discretion in this matter and determined that the testimony and reports should be excluded *as failure to do so would further delay this action and the* [ ] *Father offered no justification acceptable to the court for his failure to give sufficient advance notice of the proposed expert witnesses and documentation.*

> 5.  As a Mixed Findings of Fact and Conclusions of Law, the late disclosure of said experts and their reports *gave the* [ ] *Father "an unfair tactical advantage."*

(Emphasis added.)  The trial court then ordered "[t]he expert witnesses identified . . . the first day of trial in this hearing and the expert reports which were for the first time disclosed as being proposed as exhibits . . . are excluded."

The trial court's decision to exclude Drs. Mack and Harrell's testimony and Dr. Mack's report was not an abuse of discretion.  Instead, the trial court came to "a decision manifestly [ ]supported by reason" and the order had to "have been the result of a reasoned decision."  *See Myers*, 269 N.C. App. at 240, 837 S.E.2d at 447-48 (quoting *Briley*, 348 N.C. at 547, 501 S.E.2d at 656).  The trial court found that Father had waited until the last possible moment, the first day of trial, to disclose potential expert witnesses to Mother.  Even though Father was aware that the trial court was concerned with his behavior, and had even ordered a psychological evaluation as part of the Consent Order, Father had never given any indication up until trial that he would be calling any expert witness or providing any expert report regarding the

psychological evaluation. By waiting until the eleventh hour Father placed himself in an unfairly advantageous position at trial. And, although Rule 26 does not set forth an explicit time frame for the disclosure of expert witnesses, it "does require advance disclosure of expert witnesses who will testify at trial, even without a discovery request, discovery plan, or court order[,]" as were the circumstances in the present case. *Id.* at 256, 837 S.E.2d at 456-57.

We also note, as to these expert reports, it appears Father had multiple psychological evaluations completed during November and December 2019, yet appears to only have intended to call the experts who offered favorable reports. On the first day of trial, Mother's attorney was also provided the name of a "Dr. Varley, who is the only person that talked to Dr. Harrell," and who apparently disagreed with at least one of Father's other proposed experts. Father's counsel, however, did not indicate he planned to call Dr. Varley. Father's counsel instead referred to "three expert witnesses," and included Drs. Mack, Harrell, and Moore. The trial court also considered the fact that this case had been pending for nearly 18 months, and that visitation and custody issues would be delayed should the court continue the trial rather than exclude Father's proposed expert witnesses. The trial court did not arbitrarily decide to exclude Father's proposed experts. The decision whether to exclude Father's expert witnesses and reports was within the trial court's discretion and the circumstances of this case support exclusion of the expert witnesses and reports provided to Mother's attorney the first day of trial. *See Myers*, 269 N.C. App.

at 240, 837 S.E.2d at 447-48 (citing *Miller*, 174 N.C. App. at 620, 625 S.E.2d at 116).

The trial court's decision to exclude Dr. Mack and Dr. Harrell's expert testimony and Dr. Mack's report was not an abuse of discretion. The portion of the trial court's Expert Witness Order excluding these experts is affirmed.

### 2. *Exclusion of Dr. Moore's Report and Testimony*

We address Dr. Moore's report and testimony separately because the facts as to his report and evaluation are quite different from those of the other proposed experts. We first note that Dr. Moore's report was prepared based upon the Consent Order and served upon Mother over a year prior to trial. Father's argument regarding Dr. Moore's report and testimony is thus much stronger than as to the other proposed expert witnesses who were just identified immediately prior to trial. There is no question that Mother had ample notice of Dr. Moore's report and opinions, and as noted above, it is not entirely clear that Mother objected to this evidence.[5]

As to Dr. Moore's report, the court found:

> 9. The parties were required to secure a psychological evaluation as to custodial fitness by the Temporary Custody Order entered herein by Consent in the case having Halifax File Number 19-CVD-901. [ ] Father secured such a psychological evaluation from Dr. Roger B. Moore, Jr. which psychological evaluation was provided to [ ] Mother's attorney on December 5, 2019, and which was the same report disclosed to [ ] Mother's

---

[5] Her counsel stated before the trial court: "[M]y response would be . . . we'd like it stricken except for the one that's been disclosed to us, and we obviously have no problem about that," referring to Dr. Moore's report.

attorney on April 28, 2021.

Addressing all three proposed expert witnesses, the court ultimately concluded "the late disclosure of said experts and their reports gave the [ ] Father 'an unfair tactical advantage.'"

When ruling on Mother's motion to exclude Father's proposed expert witness, the trial court stated:

> Regardless of the rule, basic fairness requires that a party tell the other party in advance that they intend to call expert witnesses so that the other side can be prepared, they can get their own expert witnesses to talk about it or they can interview or depose, as we say, your expert witness to find out what they might have an opinion about and what it's based upon.
>
> . . . .
>
> On reading the pleadings and listening to the evidence so far, it seems to me that nothing in the mother's case should have been a surprise to the father. She obtained a domestic violence protective order in September of 2019 alleging domestic violence. And I think any experts to dispute his -- or to dispute that characterization of his tendency to violence could have been planned prior to trial with notice to her so she could have a chance to depose that witness or gather other witnesses in the field.
>
> I'm not inclined to delay this trial. It's been two years almost -- well, a year and a half, since they separated. We've got a two-year-old child here at stake. I think the parties and [Charlie] need a resolution of this matter.

The trial court also recognized shortly before denying the motion: "Well now, the first one [, Dr. Moore's report,] you mentioned that they've had for several months, I believe that was required by the consent order that they signed in October. So -- and

*so I know what that's all about.*"[6] (Emphasis added.) In addition, Finding of Fact No. 9 in the Expert Witness Order also recognized that Dr. Moore's report was produced based upon the prior court order and had been provided to Mother long before trial. While the court noted that "nothing in the [M]other's case should have been a surprise to the [F]ather[,]" the trial court's Expert Witness Order did not distinguish between Dr. Moore's report and the other expert witnesses who were disclosed just before trial. Mother was served with the report long before trial and she had a full opportunity to depose Dr. Moore, if she had wished to do so. Based upon the trial court's own findings, Father's use of Dr. Moore's report or his testimony at trial would not have resulted in any surprise to Mother or unfair tactical advantage to Father.

But even if we assume *arguendo* that the trial court erred by excluding Dr. Moore's evidence, Father has not demonstrated any prejudice from exclusion of this expert witness. *See Myers*, 269 N.C. App. at 240, 837 S.E.2d at 447 (citing *Miller v. Forsyth Mem'l Hosp., Inc.*, 174 N.C. App. 619, 620, 625 S.E.2d 115, 116 (2005) ("It is well established that orders regarding discovery matters are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of that discretion. In addition, the appellant must show not only that the trial court erred, but that prejudice resulted from that error[.]" (citations and quotation marks

---

[6] The trial court's statements in rendering the custody order also tend to indicate it was aware of the contents of Dr. Moore's report. Although various witnesses testified about the "events of September 20th," these events were the impetus to Mother's request for a protective order and the entry of the Consent Order, and Dr. Moore identified these events in his report.

omitted))). Father argues he was prejudiced by the exclusion of his expert witnesses' evidence, including Dr. Moore's report and testimony, because the trial court granted primary custody and full final decision-making authority to Mother. The trial court decreed:

> 2. In exercising primary physical and legal custody of [Charlie], the Mother shall consult with the Father about any significant decisions in the life of said child such as major healthcare procedures, educational decisions, or extracurricular activities. However, if the parties cannot agree after a reasonable period of consultation (defined as meaning no more than 72 hours) *then the decision of the Mother as the primary physical and legal custodian will control the decision.*

(Emphasis added.) Father contends the trial court granting Mother total and final decision-making authority should the parties disagree, for any reason, as to "any significant decision[ ] in the life of said child" effectively deprives him of his right to co-parent his child.

Mother contends that even if the trial court should have allowed Father to present his proposed expert testimony and reports, he has failed to identify any specific findings he contends are unsupported by the evidence, nor has he demonstrated that the trial court abused its discretion by granting her primary custody and final decision-making authority, so he was not prejudiced by the exclusion. Father contends he was prejudiced because he was deprived of any right to make decisions as to raising his child and the trial court may have ruled differently if he had been allowed to present the expert evidence. We only address the potential

prejudice to Father from the exclusion of Dr. Moore's report because, as stated above, even assuming *arguendo* the trial court erred in excluding Dr. Moore's report, Father has not shown any prejudice resulting from the exclusion of Dr. Moore's report.

When evidence is improperly excluded and not considered by the trial court, the issue is not whether the findings of fact the trial court made were supported by the evidence; the issue is we normally do not know what findings the trial court might have made if it had considered the excluded evidence. We have reviewed Dr. Moore's report, and it is not apparent this evidence might have led the trial court to rule differently upon Father's decision-making authority or visitation schedule. And here, the trial court's rendition of the order and the findings of fact indicate Father was not prejudiced from the exclusion of Dr. Moore's report and testimony.

Dr. Moore's report notes that he prepared a "forensic psychological evaluation" and noted as the "reason for referral" that Father had "presented for a forensic psychological evaluation as agreed to in a consent order detailing temporary custody in the aftermath of events that occurred in the family home in September of 2019." Based upon the trial court's findings of fact and rendition of the rationale for the order in open court, Father has not demonstrated prejudice from the exclusion of Dr. Moore's report or testimony. The trial court did not find that Father suffered from any psychological disorder or that he presented any risk of harm to the child. To the contrary, the trial court found that Father "has a healthy and nurturing relationship with [Charlie,]" that he "has also been attentive and appropriate in his care of

[Charlie] but has been less involved in the daily care of [Charlie] than the Mother because of the terms of the temporary custody order and because he has worked more hours than the Mother to provide financially for the family." The trial court concluded that Father is a "fit and proper person to have physical and legal custody of [Charlie.]" The trial court specifically noted when rendering the ruling that "[i]n making findings of fact that support this order*, I do not find the events of September 20th to be significant to the determination of custody or visitation and they really had little bearing on my judgment. The arguments that day do not reflect the parties' care and concern for [Charlie]." (Emphasis added.) Therefore, even if we were to assume *arguendo* the trial court should have allowed Father to present evidence from Dr. Moore, based upon the trial court's findings of fact regarding Father and its determination that the events of September 20th did not have any real bearing upon its ruling, Father has failed to show the exclusion of Dr. Moore's evidence created any prejudice.

Because Father did not make a requisite showing of prejudice resulting from exclusion of Dr. Moore's evidence, *see Myers*, 269 N.C. App. at 240, 837 S.E.2d at 447-48 (citing *Miller*, 174 N.C. App. at 620, 625 S.E.2d at 116), we affirm the trial court's Expert Witness Order as to Dr. Moore.

## IV. Custody Order

"Visitation privileges are but a lesser degree of custody." *Clark v. Clark*, 294 N.C. 554, 575-76, 243 S.E.2d 129, 142 (1978). Because both parents were found to be

"fit and proper persons to have physical and legal custody of [Charlie]," and because Mother was granted primary legal custody and Father was granted visitation, we therefore "review a trial court's deviation from pure joint legal custody for abuse of discretion, [and] '[the] trial court's findings of fact must support the court's exercise of this discretion.'" *Eddington v. Lamb*, 260 N.C. App. 526, 535, 818 S.E.2d 350, 357 (2018) (quoting *Peters v. Pennington*, 210 N.C. App. 1, 17, 707 S.E.2d 724, 736 (2011); citing *Diehl v. Diehl*, 177 N.C. App. 642, 647, 630 S.E.2d 25, 28 (2006)). We must determine "whether, based on the findings of fact below, the trial court made specific findings of fact to warrant a division of joint legal authority." *Id.* (quoting *Hall v. Hall*, 188 N.C. App. 527, 535, 655 S.E.2d 901, 906 (2008)). However, as to the trial court's division of legal custody, we note "[o]ur trial courts have wide latitude in distributing decision-making authority between the parties based on the specifics of a case." *Id.* at 535, 818 S.E.2d at 357 (quoting *Peters*, 210 N.C. App. at 17, 707 S.E.2d at 736 (in turn citing *Diehl*, 177 N.C. App. at 647, 630 S.E.2d at 28)).

We first note Father does not specifically challenge any findings of fact in the Custody Order. He also does not argue the trial court abused its discretion in awarding Mother primary physical and legal custody. Father's arguments are instead limited to non-specific and general references to the trial court's findings and that these findings do not support its conclusions. Father argues there are "literally **no** findings to support an abrogation of Father's right to exercise joint legal custody over Charlie as a fit and proper parent of Charlie." (Emphasis in original.) Father

argues the trial court erred by giving "'primary' legal custody of Charlie" to Mother after finding both parents "fit and proper persons to have physical and legal custody of Charlie" because "primary legal custody gives Mother final decision[-]making authority over all significant decisions concerning Charlie[,]" and "[t]he trial court's order improperly denies Father his ability as a fit and proper parent to co-parent Charlie." Mother notes Father's failure to make any specific challenges to the trial court's Findings of Fact, and argues Father misunderstands the current law in North Carolina and "improperly asks this Court to overturn the award of primary legal custody to [Mother] and order [pure] joint legal custody[.]" The trial court did not abuse its discretion in awarding Mother primary legal custody, and the trial court's findings of fact support its conclusions of law.

The trial court awarded Mother primary legal custody and final decision-making authority should the parties be unable to reconcile their positions as to "any significant decisions in the life of [Charlie] such as major healthcare procedures, educational decisions, or extracurricular activities." The award of primary physical custody was made after the trial court concluded:

> 3. The Mother and Father are fit and proper persons to have physical and legal custody of [Charlie].

> 4. As a Mixed Findings of Fact and Conclusions of Law, the undersigned Judge determined that, at this time, it is in the best interest of the minor child, [Charlie], for the Mother to have primary physical and legal custody of [Charlie] with the Father having the visitation privileges as hereinafter set forth.

To support this conclusion of law, the trial court also made "specific findings of fact to warrant a division of joint legal authority." *Eddington*, 260 N.C. at 535, 818 S.E.2d at 357 (quotation marks omitted). In the Custody Order, the trial court found "Mother has extensive community and family support locally" and "Father is not from the Roanoke Rapids area" where the family lived. The trial court found "[t]he parties agreed after the birth of [Charlie]" that Mother's mother and cousin "would be caregivers of [Charlie], whenever either of the parties worked." The trial court also found Father returned to work full time, while Mother was able to structure her professional obligations so that she can spend significantly more time caring for Charlie. This includes having her mother and cousin care for Charlie while Mother is at work. Additionally, Mother has taken additional steps to ensure a healthy and balanced life for Charlie, including making "certain [Charlie] did not eat store-bought baby food or other such foods" by making "baby food from scratch as soon as he began eating solid food[,]" by making "him nutritious dishes which has resulted in [Charlie] having an extraordinary exposure to a number of healthy foods[,]" by clothing him and making all healthcare appointments, by "expos[ing] [Charlie] to a number of new friends in outdoor settings and places as reasonably possible given the COVID-19 pandemic and her valid concerns for [Charlie]'s safety," and by "limiting her income and work schedule so that she could spend time with [Charlie]." The trial court summarized its findings well when rendering the judgment in open court:

> It is clear to me that the mother has been the

primary caregiver of [Charlie] since birth. She has been an extraordinary caregiver, absolutely devoted to [Charlie]'s care and development. She drastically limited her work schedule and her income.

But I also find that the father has been attentive and appropriate in his care of [Charlie], just much less involved than the mother.

Although the trial court also found Father spent significant time with Charlie, fed and clothed him, and developed "a healthy and nurturing relationship with [Charlie] . . . by reading to him; exposing him to music, and involving [Charlie] in indoor structured play and outdoor play and activities when weather allows[,]" the trial court's decision to grant mother primary legal and physical custody was not an abuse of discretion. "Our trial courts have wide latitude in distributing decision-making authority between the parties based on the specifics of a case." *Eddington*, 260 N.C. App. at 535, 818 S.E.2d at 357 (quotations marks omitted). The trial court here granted Mother primary legal and physical custody after finding that Mother had made great efforts to ensure a stable, balanced, and healthy lifestyle for Charlie, and that Mother was "the primary caregiver" of Charlie. Mother was able to provide a greater degree of flexibility and support in her caretaking of Charlie and was able to leverage her local family for additional support. The trial court recognized Father had also taken good care of Charlie but determined Mother was in a better position to understand Charlie's medical, educational, and social needs. And, ultimately, when two parties are unable to effectively communicate or resolve a decision, there

necessarily must be a way to defeat any stalemate as to "any significant decision[ ]" in Charlie's life. As the trial court stated, "one parent has to be in charge when you can't agree, and this is the only way it works."

The trial court did not abuse its discretion in awarding Mother primary physical and legal custody of Charlie, including final decision-making authority should Mother and Father be unable to agree as to important decisions regarding Charlie's health, wellbeing, and education. The trial court's findings of fact also support its conclusions of law. The trial court's Custody Order is affirmed.

## V. Conclusion

The trial court's conclusion excluding Dr. Moore's report and testimony based upon failure to timely disclose this expert under Rule 26(b) of Civil Procedure was not supported by its findings of fact since the report had been disclosed over a year prior to trial. However, Father has not demonstrated any prejudice from the exclusion of Dr. Moore's report or testimony. The trial court did not abuse its discretion in excluding Father's other expert witnesses, who were identified for the first time on the first day of trial.

We also conclude the trial court did not abuse its discretion by awarding Mother primary physical and legal custody, with final decision-making authority when Mother and Father are unable to agree as to important decisions regarding Charlie's health, wellbeing, and education. The Custody Order and Expert Witness Order are affirmed.

AFFIRMED.

Judge COLLINS concurs.

Judge CARPENTER concurs in Parts II, III-A, and IV and concurs in result only in Part III-B.