ELMORE, Judge.
 

 *527
 
 Zachary A. Eddington ("Father") appeals a permanent custody order awarding Krystal B. Lamb ("Mother") primary physical custody and awarding him secondary physical custody of their only minor child, A.B.E. ("Ayden").
 
 [1]
 

 *352
 
 The order also awarded both parties joint legal custody but split decision-making authority by granting Mother final decision-making authority as to Ayden's healthcare and education, and granting Father final decision-making authority as to Ayden's sports.
 

 Father asserts the trial court erred by (1) applying the wrong legal standard applicable to modifying a temporary custody order, as the prior temporary custody order had converted into a permanent custody order by operation of time, (2) awarding physical custody, as its findings were insufficient to support an award granting Mother primary physical custody of Ayden, and (3) awarding legal custody, as its findings were insufficient to support an award that deviated from pure joint legal custody between the parties.
 

 Because the temporary custody order did not convert into a permanent one, we hold that the trial court applied the proper custody modification standard. Additionally, because the trial court's findings were sufficient to support its decision as to what physical custody award would serve Ayden's best interests, and Father failed to demonstrate the trial court abused its discretion in awarding Mother primary physical custody and Father secondary physical custody of Ayden, we affirm the physical custody award. However, because the trial court's findings were insufficient to support its award of joint legal custody with these particular splits in decision-making authority, we vacate the legal custody award and remand for further proceedings on this issue.
 

 I. Background
 

 On 12 May 2008, Father and Mother became parents to their only child together, Ayden. All three lived as a family unit from Ayden's birth until September 2011, when the parties separated. Although the parties lived apart after ending their relationship, their homes were located about one mile apart on the same road, and they split custody of Ayden on a nearly equal basis.
 

 *528
 
 On 12 November 2013, Father filed a complaint for custody of Ayden. On 27 December 2013, Mother filed an answer and counterclaimed for custody, child support, and attorneys' fees. On 25 June 2014, the parties entered into a consent order for temporary custody, which awarded Mother primary physical custody of Ayden and Father secondary physical custody, and awarded the parties joint legal custody. The order provided its custodial awards were "non-prejudicial and temporary in nature pending a full hearing on the merits."
 

 On 2 April 2015, Father filed a request to set a hearing on permanent custody. The parties appeared before the court on 13 July 2015 for a status conference on permanent custody and on 17 August 2015 for court-ordered mediation, which was unsuccessful. On 7 October 2015, Mother filed a request to set a hearing on permanent custody, child support, and attorneys' fees. The hearing was calendared for 3 February 2016. But on 13 January 2016, Father moved to continue the hearing, with Mother's consent, on the basis that Father "need[ed] additional time to prepare," since "[Mother]'s discovery responses [were] due after the trial date" and her "responses [were] critical to the preparation of [his] case." On 2 February 2016, the trial court entered an order granting the requested continuance. At a 23 February 2016 case review hearing, the trial court rescheduled the hearing on permanent custody, child support, and attorneys' fees for 29 August 2016.
 

 The parties continued to share custody pursuant to the terms of the temporary custody consent order until the permanent custody hearing began in August 2016. After a three-day hearing, the trial court entered a permanent custody order on 23 February 2017. In its order, the trial court awarded (1) Mother primary physical custody of Ayden and Father secondary custody in the form of visitation, and (2) joint legal custody but split decision-making authority, granting Mother final decision-making authority as to Ayden's healthcare and education, and granting Father final decision-making authority as to Ayden's sports. Father appeals.
 

 II. Analysis
 

 On appeal, Father asserts the trial court erred by (1) applying the incorrect custody
 
 *353
 
 modification standard, since by the time of the permanent custody hearing, the temporary order had become permanent by operation of time; (2) awarding Mother primary physical custody of Ayden, and Father secondary custody in the form of visitation, because its findings were insufficient to support its physical custody award; and (3) awarding joint legal custody but splitting decision-making authority, since its findings were insufficient to support deviating from pure joint legal custody.
 
 *529
 

 A. Custody Modification Standard
 

 Father first asserts the trial court applied the wrong custody modification standard. He concedes the 2014 consent order was a temporary custody order when entered but argues it converted into a permanent order by the time of the permanent custody hearing. Thus, Father argues, the trial court improperly applied the legal standard applicable to modifying a temporary custody order, when it should have applied the standard applicable to modifying a permanent custody order. We disagree.
 

 We review
 
 de novo
 
 whether a temporary custody order has converted into a permanent custody order by operation of time.
 
 See
 

 Woodring v. Woodring
 
 ,
 
 227 N.C. App. 638
 
 , 642,
 
 745 S.E.2d 13
 
 , 17 (2013) (citing
 
 Romulus v. Romulus
 
 ,
 
 216 N.C. App. 28
 
 , 32,
 
 715 S.E.2d 889
 
 , 892 (2011) ). A temporary custody order may "become permanent by operation of time[,]"
 
 id.
 
 at 643,
 
 745 S.E.2d at 18
 
 (citations omitted), when "neither party sets the matter for a hearing within a reasonable time,"
 

 id.
 

 (quoting
 
 Senner v. Senner
 
 ,
 
 161 N.C. App. 78
 
 , 81,
 
 587 S.E.2d 675
 
 , 677 (2003) ). "Whether a request for the calendaring of the matter is done within a reasonable period of time must be addressed on a case-by-case basis."
 

 Id.
 

 (quoting
 
 LaValley v. LaValley
 
 ,
 
 151 N.C. App. 290
 
 , 293 n.6,
 
 564 S.E.2d 913
 
 , 915 n.6 (2002) ).
 

 The relevant time period starts when a temporary order is entered and ends when a party requests the matter be set for hearing, not when the hearing is held.
 
 See
 

 LaValley
 
 ,
 
 151 N.C. App. at
 
 293-94 n.5,
 
 564 S.E.2d at
 
 915 n.5 ("We are careful to use the words 'set for hearing' rather than 'heard' because we are aware of the crowded court calendars in many of the counties of this [s]tate."). While we have held that a twenty-three month delay between the entry of a temporary custody order and a party's request to calendar the matter for a permanent custody hearing is unreasonable, thereby converting a temporary custody order into a permanent one,
 
 id.
 
 at 291-93,
 
 564 S.E.2d at 914-15
 
 , the reasonableness of the delay depends in part on whether the case lie dormant before the request to set the matter for hearing was made,
 
 see
 

 Senner
 
 ,
 
 161 N.C. App. at 81
 
 ,
 
 587 S.E.2d at 677
 
 (holding a twenty-month delay was not unreasonable when, during that period, the parties had unsuccessfully attempted to negotiate a new custody arrangement);
 
 see also
 

 Woodring
 
 ,
 
 227 N.C. App. at 644
 
 ,
 
 745 S.E.2d at 19
 
 (holding twelve months was not unreasonable when,
 
 inter alia
 
 , "the parties were before the court [for custody-related matters] at least three times in the interim period between the entry of the temporary order and the scheduled permanent custody hearing").
 

 *530
 
 Here, only nine months elapsed between entry of the 25 June 2014 temporary custody consent order and Father's 2 April 2015 request to set the matter for a permanent custody hearing. Further, after the temporary custody order was entered, the case did not lie dormant; the parties appeared before the court, another request to set the case for hearing was filed, litigation continued between the parties including discovery requests and answers, a motion to continue was filed and granted, and case review sessions were held. The parents appeared before the court on 13 July 2015 for a permanent custody status conference and, after the case was set for mandatory mediation, the parents appeared before the court on 17 August 2015 to mediate. On 7 October 2015, less than two months after court-ordered mediation was unsuccessful, Mother filed another request to set a hearing on permanent custody, child support, and attorneys' fees. Although that hearing was scheduled for 3 February 2016, on 13 January 2016, Father moved to continue the hearing, with Mother's consent, on the ground that Mother's discovery responses were due after the scheduled
 
 *354
 
 hearing date and were necessary to prepare his case. On 2 February 2016, the trial court entered an order granting the motion to continue. On 23 February 2016, during a case review session where both parties' counsel appeared, the trial court rescheduled the hearing for 29 August 2016.
 

 Because Father's request to set the matter for hearing occurred only nine months after entry of the temporary custody order, Mother's request occurred less than two months after court-ordered mediation was unsuccessful, and litigation continued after the temporary order was entered, we conclude under the circumstances of this case that the temporary order did not become permanent by operation of time. Therefore, we hold the trial court applied the proper custody modification standard and overrule this argument.
 

 B. Physical Custody
 

 Father next asserts the trial court's factual findings were insufficient to award Mother primary physical custody of Ayden and, further, that its order should be vacated because its findings are inadequate for meaningful appellate review of whether the trial court abused its discretion in determining what physical custody award would serve Ayden's best interests. We disagree.
 

 As Father does not challenge the evidentiary sufficiency of any factual finding, our review is limited to a
 
 de novo
 
 assessment of whether the trial court's findings support its legal conclusions.
 
 Carpenter v. Carpenter
 
 ,
 
 225 N.C. App. 269
 
 , 270,
 
 737 S.E.2d 783
 
 , 785 (2013) (citing
 
 *531
 

 Hall v. Hall
 
 ,
 
 188 N.C. App. 527
 
 , 530,
 
 655 S.E.2d 901
 
 , 904 (2008) ). However, "[w]e review a trial court's [legal conclusion] as to the best interest of the child for an abuse of discretion."
 
 In re C.P.
 
 , --- N.C. App. ----, ----,
 
 801 S.E.2d 647
 
 , 651 (2017) (citing
 
 In re J.H.
 
 ,
 
 244 N.C. App. 255
 
 , 269,
 
 780 S.E.2d 228
 
 , 238 (2015) ). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason. ... [or] upon a showing that [its ruling] was so arbitrary that it could not have been the result of a reasoned decision."
 
 White v. White
 
 ,
 
 312 N.C. 770
 
 , 777,
 
 324 S.E.2d 829
 
 , 833 (1985) (internal citation omitted).
 

 Where, as here, "the trial court finds that both parties are fit and proper to have custody, but determines that it is in the best interest of the child for one parent to have primary physical custody[ ] ... such determination will be upheld if it is supported by competent evidence."
 
 Hall
 
 ,
 
 188 N.C. App. at 530
 
 ,
 
 655 S.E.2d at
 
 904 (citing
 
 Sain v. Sain
 
 ,
 
 134 N.C. App. 460
 
 , 464,
 
 517 S.E.2d 921
 
 , 925 (1999) ). "However, when the court fails to find facts so that this Court can determine that the order is adequately supported by competent evidence and the welfare of the child subserved, then the order entered thereon must be vacated and the case remanded for detailed findings of fact."
 
 Crosby v. Crosby
 
 ,
 
 272 N.C. 235
 
 , 238,
 
 158 S.E.2d 77
 
 , 80 (1967) (citation omitted);
 
 see also
 

 Carpenter
 
 ,
 
 225 N.C. App. at 278-79
 
 ,
 
 737 S.E.2d at 790
 
 (reversing custody order and remanding for further findings where findings were too meager to support the award).
 

 In resolving a custody dispute between parents, a trial court is "entrusted with the delicate and difficult task of choosing an environment which will, in his judgment, best encourage full development of the child's physical, mental, emotional, moral and spiritual faculties[,]"
 
 Phelps v. Phelps
 
 ,
 
 337 N.C. 344
 
 , 355,
 
 446 S.E.2d 17
 
 , 23 (1994) (quoting
 
 In re Peal
 
 ,
 
 305 N.C. 640
 
 , 645,
 
 290 S.E.2d 664
 
 , 667 (1982) ), and must "determine by way of comparisons between the two [parents], upon consideration of all relevant factors, which of the two is best fitted to give the child the home-life, care, and supervision that will be most conducive to [the child's] well-being."
 
 Griffith v. Griffith
 
 ,
 
 240 N.C. 271
 
 , 275,
 
 81 S.E.2d 918
 
 , 921 (1954). "Trial courts are permitted to consider an array of factors in order to determine what is in the best interest of the child[,]"
 
 Phelps
 
 ,
 
 337 N.C. at 352
 
 ,
 
 446 S.E.2d at 22
 
 , and findings supporting this conclusion "may concern physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child."
 
 Hall
 
 ,
 
 188 N.C. App. at 532
 
 ,
 
 655 S.E.2d at 905
 
 (quoting
 
 Steele v. Steele
 
 ,
 
 36 N.C. App. 601
 
 , 604,
 
 244 S.E.2d 466
 
 , 468 (1978) ).
 

 *532
 

 *355
 
 Here, the trial court issued the following unchallenged, and thus binding, factual findings supporting its best-interests conclusion:
 

 10. The Plaintiff/Father resides at 3515 Old Camden Road, Monroe, NC in a 1600 square foot home with his new wife, Holland, and with the minor child herein.
 

 11. Plaintiff/Father's wife, Holland, gets along well with Ayden, and it is in Ayden's best interest to be allowed to continue his relationship with his step-mother.
 

 12. Plaintiff/Father's home is large enough to accommodate the needs of those who live there, and Plaintiff/Father bought the home in March of 2016, to be in the Unionville School District.
 

 13. Defendant/Mother resides with her mother, Valerie Lamb, and Ayden at 3716 Old Camden Road, Monroe, NC almost next door to Plaintiff/Father in a two story house on 13 acres. The residence is large enough to accommodate all who live there.
 

 14. Plaintiff/Father has served as a t-ball and hockey coach for Ayden.
 

 15. As of date of trial, Plaintiff/Father was out of work collecting worker's compensation due to a shoulder injury. Once he returns to work as a welder, his hours are 6:30 a.m. to 3:00 p.m. in Lancaster, SC, about a 37 minute drive from his home.
 

 16. Defendant/Mother is employed full time as a PRN health care technician at CMC-Union and has been so employed continuously there since 2011. In that she works PRN, Defendant/Mother has the ability of making out her own schedule, which aids in her care of Ayden.
 

 17. There has been a break down and lapse in the parties' ability to communicate about Ayden's needs and best interests that runs contrary to his best interests.
 

 18. There have been in February of 2011 instances of DV between Plaintiff/Father and Defendant/Mother in front of Ayden that were contrary to his best interests that resulted in police being summoned and Defendant/Mother being arrested. The charges against Defendant/Mother were later dismissed with the concurrence of the Plaintiff/Father.
 

 *533
 
 19. Ayden has been prescribed medication for ADHD by his physician. Plaintiff/Father disagrees with the appropriateness of that medication being administered to Ayden and does not see to it that Ayden gets his medicine as prescribed, which is contrary to Ayden's best interests to have his medicine administered to him only intermittently.
 

 20. Plaintiff/Father sent Defendant/Mother a text in September of 2013, prior to filing his Compliant for custody, telling Defendant/Mother that he never wanted to see his son again and nevertheless posting comments on social media that described himself as "a father from a distance" to Ayden. This resulted in Plaintiff/Father not seeing his son Ayden for approximately 85 days. Such behavior was grossly contrary to Ayden's best interests.
 

 21. Plaintiff/Father had legitimate concerns that Defendant/Mother is or has been in the past involved romantically or otherwise with Steven Dayton, a convicted felon and known drug addict as well as Tumani Washington, neither of whom this Court finds to be suitable persons to be around Ayden. Said involvement with Mr. Dayton has been as recent as Summer 2015 according to various Facebook posts, and is contrary to Ayden's best interest. Defendant/Mother admits in retrospect that associating with Mr. Dayton was a lapse in judgment on her part.
 

 22. Plaintiff/Father was less than credible when he testified that "a doctor" had told him that melatonin caused his son's nosebleeds.
 

 23. Ayden currently attends after school at Unionville Elementary where he is in the 3rd grade.
 

 24. Defendant/Mother emailed Plaintiff/Father about stopping conversations with him because of him reportedly halting or being slow in his payment of child support to her. Ending conversation between his two parents because of lack of child support is contrary to best interest of Ayden.
 

 25. Plaintiff/Father enrolled Ayden in after school unilaterally and without conferring with Defendant/Mother first, nor did Plaintiff/Father list Defendant/Mother as a contact
 
 *356
 

 *534
 
 person for Ayden at after school. This was all contrary to best interest. Because of her PRN schedule, Defendant/Mother is able to care for Ayden instead of placing him in after school on her days with him.
 

 26. Defendant/Mother has been diagnosed as being bi-polar and is currently taking Topamax, Wellbutrin, Adderall, and Almapin for same.
 

 27. Defendant/Mother's mother, Valerie Lamb, appears to the Court to be a stabilizing and positive influence in her daughter's life and that of Ayden.
 

 28. Despite Plaintiff/Father and Defendant/Mother living so close to one another, this is not a case where a 50/50 split would serve Ayden's best interests, because the parties do not communicate with each other in a civil manner and because there is such friction between Plaintiff/Father and Defendant/Mother on deciding what is in Ayden's best interests. Ayden needs consistency and routine in his parental approach to his schooling and health care needs, in particular Ayden taking his ADHD medicine daily.
 

 ....
 

 32. Plaintiff/Father has an average gross monthly income of $3,842.00 from his regular employment, and $2,130.00 from his temporary worker's compensation.
 

 33. Defendant/Mother has an average gross monthly income of $2,075.00.
 

 We conclude these unchallenged findings are adequate for meaningful appellate review and were sufficient to support the trial court's determination of what physical custody award would serve Ayden's best interests. The findings compared the parents' home environments, mental and behavioral fitness, work schedules as it relates to their abilities to care for Ayden, and past decision-making with respect to Ayden's care. Accordingly, we deny Father's request to vacate the order based on insufficient findings bearing on Ayden's welfare. Further, these findings demonstrate that the trial court's best-interests conclusion-that primary physical custody with Mother and secondary custody with Father served Ayden's best interests-was not manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision.
 

 *535
 
 For example, the trial court found that Father works from "6:30 a.m. to 3:00 p.m. in Lancaster, SC, about a 37 minute drive from his home" and enrolled Ayden in after school, while Mother is able to set her own work schedule, "which aids in her care of Ayden" and can "care for Ayden instead of placing him in after school on her days with him"; that Father's unilateral decision to enroll Ayden in after school and not list Mother as a contact person for Ayden was "all contrary to best interest," since Mother "is able to care for Ayden instead of placing him in after school on her days with him"; that Father texted Mother "that he never wanted to see his son again," resulting in Father "not seeing his son Ayden for approximately 85 days," which was "behavior ... grossly contrary to Ayden's best interests"; that "Ayden has been prescribed medication for ADHD by his physician," but Father "disagrees with the appropriateness of that medication ... and does not see to it that Ayden gets his medicine as prescribed, which is contrary to Ayden's best interests to have his medicine administered to him only intermittently"; and that "Ayden needs consistency and routine in his parental approach to his schooling and health care needs, in particular Ayden taking his ADHD medicine daily." Accordingly, we hold the trial court did not abuse its discretion in awarding primary physical custody of Ayden to Mother and secondary physical custody to Father. Therefore, we affirm its physical custody award.
 

 C. Legal Custody
 

 Father next asserts the trial court's findings were insufficient to support its deviation from pure joint legal custody by granting Mother final decision-making authority as to Ayden's health care and education. We agree, vacate the part of the award allocating decision-making authority, and remand for further findings on the issue of joint legal custody.
 

 " '[L]egal custody' ... refer[s] generally to the right and responsibility to make decisions with important and long-term implications for a child's best interest
 
 *357
 
 and welfare."
 
 Diehl v. Diehl
 
 ,
 
 177 N.C. App. 642
 
 , 646,
 
 630 S.E.2d 25
 
 , 27 (2006) (citations omitted). "Our trial courts have wide latitude in distributing decision-making authority between the parties based on the specifics of a case."
 
 Peters v. Pennington
 
 ,
 
 210 N.C. App. 1
 
 , 17,
 
 707 S.E.2d 724
 
 , 736 (2011) (citing
 
 Diehl
 
 ,
 
 177 N.C. App. at 647
 
 ,
 
 630 S.E.2d at
 
 28 ). While we review a trial court's deviation from pure joint legal custody for abuse of discretion, "a trial court's findings of fact must support the court's exercise of this discretion."
 

 Id.
 

 ;
 
 see also
 

 Diehl
 
 ,
 
 177 N.C. App. at 647-48
 
 ,
 
 630 S.E.2d at 28-29
 
 (reversing joint legal custody award where the findings were insufficient to support the particular allocation of decision-making authority between the parents and remanding
 
 *536
 
 for further findings on the issue of joint legal custody);
 
 Hall
 
 ,
 
 188 N.C. App. at 535-36
 
 ,
 
 655 S.E.2d at 906-07
 
 (same). Our review thus centers on "whether, based on the findings of fact below, the trial court made specific findings of fact to warrant a division of joint legal authority."
 
 Hall
 
 ,
 
 188 N.C. App. at 535
 
 ,
 
 655 S.E.2d at 906
 
 .
 

 In
 
 Diehl
 
 , we held the trial court's findings were insufficient to support its deviation from pure joint legal custody by granting the mother "primary decision making authority," which, in the case of a dispute between the parents, effectively "stripped [the father] of all decision-making authority ...."
 
 177 N.C. App. at 646
 
 ,
 
 630 S.E.2d at 28
 
 . Because "only the court's findings regarding the parties' difficulty communicating and [the mother's] occasional troubles obtaining [the father's] consent could be construed to indicate anything other than traditional joint legal custody would be appropriate,"
 
 id.
 
 at 648,
 
 630 S.E.2d at 29
 
 , we reversed the trial court's ruling awarding primary decision-making authority to the mother and remanded for further proceedings on the issue of joint legal custody,
 

 id.
 

 Similarly, in
 
 Hall
 
 , we held the trial court's findings were insufficient to support its deviation from pure joint legal custody by granting a parent "decision-making authority regarding all issues affecting the minor children except for issues regarding sports and extracurricular activities."
 
 188 N.C. App. at 533-34
 
 ,
 
 655 S.E.2d at 906
 
 (brackets omitted). We clarified
 
 Diehl
 
 's holding as follows: "[T]he trial court may only deviate from 'pure' legal custody after making specific findings of fact" and, therefore, interpreted
 
 Diehl
 
 as requiring a reviewing court to "determine whether, based on the findings of fact below, the trial court made specific findings of fact to warrant a division of joint legal authority."
 
 Id.
 
 at 535,
 
 655 S.E.2d at 906
 
 . Because the trial court in
 
 Hall
 
 "made no findings that a split in the decision-making was warranted[,]"
 

 id.
 

 , we reversed the trial court's ruling regarding its split of decision-making authority and remanded for further proceedings on the issue of joint legal custody,
 
 id.
 
 at 535,
 
 655 S.E.2d at 907
 
 . We instructed:
 

 On remand, the trial court may allocate decision-making authority between the parties again; however, were the court to do so, it must set out
 
 specific findings
 
 as to why deviation from "pure" joint legal custody is
 
 necessary.
 
 Those findings must detail why a deviation from "pure" joint legal custody is in the
 
 best interest of the children
 
 . As an example, past disagreements between the parties regarding matters affecting the children, such as where they would attend school or church, would be sufficient,
 
 *537
 
 but mere findings that the parties have a tumultuous relationship would not.
 

 Id.
 
 at 535-36,
 
 655 S.E.2d at 907
 
 (internal footnote omitted).
 

 Contrarily, in
 
 MacLagan v. Klein
 
 ,
 
 123 N.C. App. 557
 
 ,
 
 473 S.E.2d 778
 
 (1996),
 
 abrogated on other grounds by
 

 Pulliam v. Smith
 
 ,
 
 348 N.C. 616
 
 ,
 
 501 S.E.2d 898
 
 (1998), we held the trial court's findings were sufficient to support its deviation from pure joint legal custody by granting a parent sole religious training decision-making authority.
 
 Id.
 
 at 567-69,
 
 473 S.E.2d at 786-87
 
 . There, the trial court found:
 

 [T]he parties had agreed to rear the minor child in the Jewish faith; the child has had a positive sense of identity as a Jew since she was three years old and has had substantial involvement with the Judea Reform Congregation Synagogue in Durham; and since her introduction into activities at
 
 *358
 
 the Edenton United Methodist Church, the child has experienced stress and anxiety as a result of her exposure to two conflicting religions which have had a detrimental effect on her emotional well-being.
 

 Id.
 
 at 569,
 
 473 S.E.2d at 787
 
 . We reasoned these "findings ... demonstrate[d] affirmatively a causal connection between the conflicting religious beliefs and a detrimental effect on the child's general welfare" and thus "support[ed] ... granting [the father] charge of [the minor's] religious training and practice ...."
 

 Id.
 

 Accordingly, we affirmed the trial court's allocation of decision-making authority.
 

 Id.
 

 Here, the trial court awarded both parents permanent joint legal custody and ordered they "shall confer on all issues of major importance regarding [Ayden's] well-being[.]" However, the trial court's award further ordered that, "in the event of disagreement, ... Mother shall have final decision making authority regarding health care and education." Similar to the terms of the legal custody award in
 
 Diehl
 
 , the terms of the award here, if the parties disputed any matter relating to Ayden's health care or education, essentially abrogated Father's decision-making authority. Our review is whether the trial court's findings supported its discretionary decision to order such a deviation from pure joint legal custody.
 

 As to the split in health care decision-making authority, the trial court issued the following relevant facts:
 

 19. Ayden has been prescribed medication for ADHD by his physician. Plaintiff/Father disagrees with the
 
 *538
 
 appropriateness of that medication being administered to Ayden and does not see to it that Ayden gets his medicine as prescribed, which is contrary to Ayden's best interests to have his medicine administered to him only intermittently.
 

 ....
 

 22. Plaintiff/Father was less than credible when he testified that "a doctor" had told him that melatonin caused his son's nosebleeds.
 

 ....
 

 28.... [T]his is not a case where a 50/50 split would serve Ayden's best interests, because ... there is such friction between Plaintiff/Father and Defendant/Mother on deciding what is in Ayden's best interests. Ayden needs consistency and routine in his parental approach to his ... health care needs, in particular Ayden taking his ADHD medicine daily.
 

 While these findings may support the trial court's exercise of discretion in deviating from pure joint legal custody by granting Mother final decision-making authority if the parties dispute matters concerning Ayden's ADHD treatment, we conclude the findings are insufficient to support such a broad abrogation from Father of final decision-making authority as to all issues related to Ayden's health care. While the parties disputed the appropriateness of Ayden's ADHD medication, and the trial court found its inconsistent administration would be contrary to Ayden's best interests, no other findings indicate any other health care dispute rendering it necessary for Ayden's best interests to deviate from a pure joint legal custody award by abrogating Father from final decision-making authority as to all matters relating to Ayden's health care. Accordingly, we vacate that part of the legal custody award granting Mother final health care decision-making authority and remand for further proceedings regarding this issue as it relates to joint legal custody.
 

 As to the split in education decision-making authority, the trial court issued the following relevant facts:
 

 25. Plaintiff/Father enrolled Ayden in after school unilaterally and without conferring with Defendant/Mother first, nor did Plaintiff/Father list Defendant/Mother as a contact person for Ayden at after school. This was all contrary to best interest. Because of her PRN schedule, Defendant/Mother
 
 *539
 
 is able to care for Ayden instead of placing him in after school on her days with him.
 

 ....
 

 28.... [T]his is not a case where a 50/50 split would serve Ayden's best interests, because ... there is such friction between Plaintiff/Father and Defendant/Mother on decision what is in Ayden's best interests.
 

 *359
 
 Ayden needs consistency and routine in his parental approach to his schooling ... [.]
 

 While these findings may support the trial court's exercise of discretion in deviating from pure joint legal custody by granting Mother final decision-making authority if the parties dispute matters concerning Ayden's enrollment in after school, we conclude the findings are insufficient to support such a broad abrogation from Father of final decision-making authority as to all matters relating to Ayden's education. Whether to enroll a child in an after-school program is not a dispute about any substantive educational matter, such as, for example, which school Ayden should attend. These findings neither affirmatively demonstrate any causal link between a dispute about an academic or schooling matter and any negative effect on Ayden, nor demonstrate how such a deviation from pure joint legal custody was necessary to serve Ayden's best interests. Accordingly, we vacate that part of the legal custody award granting Mother final education decision-making authority and remand for further proceedings regarding this issue as it relates to joint legal custody.
 

 Because we conclude the trial court's findings were insufficient to support its exercise of discretion in deviating from a pure joint legal custody award by allocating decision-making authority between the parents in this manner, we vacate the trial court's rulings allocating decision-making authority and remand for further proceedings on the issue of joint legal custody. "On remand, the trial court may identify specific areas in which [either parent] is granted decision-making authority upon finding appropriate facts to justify the allocation."
 
 Diehl
 
 ,
 
 177 N.C. App. at 648
 
 ,
 
 630 S.E.2d at 29
 
 .
 

 III. Conclusion
 

 Because the temporary custody order did not become permanent by operation of time, we hold that the trial court applied the proper custody modification standard applicable to temporary custody orders. The trial court's factual findings supporting its physical custody award were
 
 *540
 
 sufficient to enable meaningful appellate review and to support the trial court's conclusion as to what award would serve Ayden's best-interests. Because we discern no abuse of discretion in the trial court's decision to award Mother primary physical custody and Father secondary physical custody of Ayden, we affirm its physical custody award. However, because we conclude the trial court's factual findings were insufficient to support its exercise of discretion in splitting decision-making authority in this manner, we vacate its rulings granting Mother final health care and education decision-making authority and remand for further proceedings on the issue of joint legal custody.
 

 AFFIRMED IN PART; VACATED AND REMANDED IN PART.
 

 Judges HUNTER, JR. and ZACHARY concur.
 

 [1]
 

 A pseudonym is used to protect the minor's identity.