IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-892

Filed 18 June 2024

Carteret County, No. 19 CVD 73

MICHAEL BRIAN LAWRENCE, Plaintiff

v.

HAILEY HAWKINS LAWRENCE, Defendant

Appeal by Plaintiff from an order entered 5 October 2022 by Judge Andrew K. Wigmore in Carteret County District Court. Heard in the Court of Appeals 17 April 2024.

*Wyrick Robbins Yates & Ponton LLP, by Charles W. Clanton and Jessica B. Heffner, for the Plaintiff-Appellant.*

*Peacock Family Law, by Carolyn T. Peacock, for the Defendant-Appellee.*

WOOD, Judge.

Plaintiff appeals from a Determination of Permanent Custody Order entered on 5 October 2022. Defendant moved to dismiss the appeal on grounds of lack of appellate jurisdiction. Plaintiff argues on appeal that the trial court erred in its conclusion that the consent custody order entered by the parties had become permanent, rather than remaining temporary. For the reasons stated below, we hold this Court has jurisdiction over the appeal and reverse the trial court's 5 October 2022 order.

## I.  Factual and Procedural Background

Michael Brian Lawrence ("Plaintiff") and Haley Hawkins Lawrence ("Defendant") are the parents of one child, a daughter, born 9 July 2016.  They married on 16 May 2015 and later separated on 29 November 2018.  On 16 January 2019, Plaintiff filed a complaint for child custody, child support, divorce from bed and board, interim distribution, equitable distribution, and attorney fees.  On 17 January 2019, the court entered an Ex Parte Temporary Child Custody Order granting the parties joint legal and physical custody on a week on / week off basis.  On 18 January 2019, the court entered an order requiring the parties to attend mediation.

A hearing on the Temporary Custody order was held on 31 January 2019.  During a recess at the hearing, Plaintiff and Defendant came to an agreement on temporary child custody terms.  Ultimately, the court entered a Temporary Consent Order (the "January Consent Order") containing the terms to which the parties agreed.  The January Consent Order contained, in-part, the following provisions:

> 1. The Defendant shall have temporary primary custody of the minor child….
>
> 2. The Plaintiff shall have temporary secondary custody, pursuant to the following schedule:
>
> a. Every other weekend from Friday at 4:00 p.m. until Sunday at 6:00 p.m., beginning Friday, February 1, 2019.
>
> b. One day during the week from 4:00 p.m. until 7:00 p.m.
>
> . . .

8. This is a temporary order.

The order did not make any provisions for summer or holiday visitation.

The January Consent Order was subsequently modified on 17 April 2019. With the parties' consent, the trial court entered a Modified Temporary Order (the "Modified Consent Order"), which stated:

> 1. The Plaintiff's visitation with the minor child shall continue on an every other weekend basis from Friday 2:30 p.m. until Monday morning at 8:30 a.m.
>
> 2. The Plaintiff shall no longer have mid-week visitation with the minor child.
>
> 3. Except as modified herein, the remaining terms and conditions of the January 31, 2019, Temporary Consent Order shall remain in full force and effect.

Between March 2019 and October 2019, both parties served each other with written discovery requests, interrogatories, and requests for the production of documents; and both parties filed motions to compel, some of which related to child custody. The motions to compel were noticed for a hearing, but the record does not show that a hearing was held, or whether the information sought was related to child custody. On 7 October 2019, following Plaintiff's attorney's withdrawal, Plaintiff's new attorney filed a calendar request and a notice of hearing on child custody, set for 9 December 2019. On 2 December 2019, Plaintiff filed a calendar request and notice for hearing on "Christmas Visitation," set for 9 December 2019. There is nothing in the record to show that a hearing was conducted on 9 December 2019.

On 23 January 2020, the parties participated in a court-ordered mediation, which ended in "an impasse." In July 2020, Plaintiff's second attorney withdrew from the case, and on 21 August 2020, Plaintiff's new counsel filed a calendar request and a notice of hearing on custody, set for the 31 August 2020 term of the court. From August 2020 to August 2021, Plaintiff filed multiple calendar requests and notices of hearing on the issue of custody, and both Plaintiff and Defendant filed motions for peremptory settings. The case was continued multiple times by a series of continuance orders for reasons including the COVID-19 pandemic, withdrawal of Plaintiff's attorney, retirement of Plaintiff's subsequent attorney and not being reached by the court.

On 31 August 2021, the trial court conducted a hearing on the motions for peremptory setting and Plaintiff's motion for a scheduling order. At the hearing, Defendant's counsel raised that the issue of whether the January Consent Order, as modified by the Modified Consent Order, was a temporary or permanent order needed to be decided. The court agreed and concluded that the issue of whether it was a permanent order was to be heard prior to the custody trial. The court also directed Defendant's counsel to draft a scheduling order; however, Plaintiff's counsel failed to timely respond to the proposed order. Thereafter, Defendant's counsel filed a Motion in the Cause, requesting a new scheduling order to be entered. On 3 December 2021, a hearing was conducted on the Motion in the Cause. The court addressed the scheduling order, holiday visitation, and again, the scheduling of a hearing on the

status of the January Consent Order.

On 14 December 2021, the trial court entered a Scheduling Order, which stated "[t]his matter shall be scheduled peremptorily for hearing for a determination as to whether or not the Temporary Custody Order entered on January 31, 2019, has become a permanent Order at 2:00 p.m. on January 24, 2022." It further concluded, "[t]he trial in this matter shall be set for the March 21, 2022, term of Court in Carteret County Domestic Court for all remaining issues not previously decided by the Court."

On 18 February 2022, a hearing was held on the issue of whether the January Consent Order was temporary or permanent. The trial court determined and announced that the January Consent Order was a permanent order but did not file a written order containing the ruling until October 2022. The trial set for hearing on 21 March 2022 was not held. On 23 September 2022, Plaintiff filed a Motion to Establish Holiday and Summer Visitation, along with a notice of hearing and calendar request, which requested the court to establish a schedule.

On 5 October 2022, the trial court entered its Order from the 18 February 2022 hearing ("October 2022 Order"), finding in-part:

> 32. Eighteen (18) months passed from the entry of the original January 31, 2019, Consent Order until the Notice of Hearing was filed by the Plaintiff requesting a hearing on the issue of custody in August 2020.

> 33. The Order originally entered on January 31, 2019, and subsequently modified by consent on April 16, 2019, became a Permanent Order by acquiescence. Neither the Plaintiff nor the Defendant filed Motions for Hearing or

Review for this Order to be reviewed by the Court for a period of no less than 18 months.

34. The Plaintiff and Defendant have been following the terms of the prior Consent Order previously entered on January 31, 2019, on a year-round basis.

The court further concluded:

3. The January 31, 2019 Order and subsequent modification on April 16, 2019, is a Permanent Order because it was not entered without prejudice; it did not have a reconvening trial date; it established an indefinite schedule regarding physical custody; and it determined all issues relating to custody pending before the Court.

Thus, the January Consent Order, and the Modified Consent Order, were found to be a permanent custody order. The parties were directed to comply with N.C. Gen. Stat. § 50-13.7, which requires a party to show a "substantial change in circumstances" that affects the well-being of the child, for further modification of the Order. On 3 November 2022, Plaintiff filed a notice of appeal from the October 2022 Order.

## II. Appellate Jurisdiction

As a threshold matter, we first must determine whether this appeal is properly before us. On 21 February 2024, Defendant filed a Motion to Dismiss on grounds of lack of appellate jurisdiction. Defendant asserts this Court lacks jurisdiction under N.C. Gen. Stat. § 7A-27(b)(2) and § 50-19.1. N.C. Gen. Stat. § 7A-27(b)(2) provides that an appeal as of right exists "from any final judgment of a district court in a civil action." Further, N.C. Gen. Stat. § 50-19.1 allows a party to appeal from an order adjudicating a claim for child custody if "the order or judgment would otherwise be a

final order or judgment within the meaning of [N.C. Gen. Stat.] 1A-1, Rule 54(b)."

Defendant contends the October 2022 Order is not a final order for purposes of § 7A-27(b)(2) or § 50-19.1. Instead, Defendant argues, the October 2022 Order is interlocutory and not immediately appealable, as further action was required by the trial court. In *Veazey v. City of Durham*, the Court distinguished between final judgments and interlocutory orders stating: "[a] final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court[,]" whereas, "[a]n interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 361-362, 57 S.E.2d 377, 381 (1950) (citations omitted).

Citing *Veazey*, Defendant argues the October 2022 Order is interlocutory because it (1) "was made during the pendency of an action" as it determined the question of whether the January Consent Order was temporary or permanent, so the parties were on notice before the custody trial; (2) "it did not dispose of the case" as the custody issue was still pending and Plaintiff had a Motion to Establish Holiday and Summer Visitation still pending; and (3) further action was required by the trial court to determine the custody issue. *Id.*

Contrary to Defendant's assertion, the October 2022 Order is immediately appealable because "an appeal of right does lie from the final, permanent custody

order reflecting the trial court's ultimate disposition." *Brown v. Swarn*, 257 N.C. App. 417, 422-23, 810 S.E.2d 237, 240 (2018) (citation omitted). The trial court determined in the October 2022 Order that the January Consent Order and Modified Consent Order was "found to be a Permanent Custody Order." Although a hearing on custody and holiday visitation was pending, any order entered on those issues following the October 2022 Order would be a modification of the "permanent custody order." "Pursuant to N.C. Gen. Stat. § 50-13.7(a) (2005), 'an order of a court of [North Carolina] for custody of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested.'" *Lewis v. Lewis*, 181 N.C. App. 114, 118, 638 S.E.2d 628, 631 (2007). "The word custody under the statute also includes visitation." *Id.* (citations omitted). The pendency of a motion to modify custody does not affect whether this court has jurisdiction over the appeal on the underlying permanent custody order. Therefore, we hold this court has jurisdiction over Plaintiff's appeal.

## III. Analysis

Plaintiff presents two arguments on appeal: (1) the trial court incorrectly determined that the temporary consent order, as modified, was a permanent custody order; and (2) the trial court incorrectly determined that the temporary consent order, as modified, became a permanent order "by acquiescence."

**A. *Senner* Test**

"[W]hether an order is temporary or permanent in nature is a question of law, reviewed on appeal *de novo*." *Smith v. Barbour*, 195 N.C. App. 244, 249, 671 S.E.2d 578, 582 (2009) (citation omitted).  A permanent custody order "establishes a party's present right to custody of a child and that party's right to retain custody indefinitely[,]" whereas, a temporary custody order "establish[es] a party's right to custody of a child pending the resolution of a claim for permanent custody." *Regan v. Smith*, 131 N.C. App. 851, 852-53, 509 S.E.2d 452, 454 (1998) (citations omitted).  In general, "an order is temporary if either (1) it is entered without prejudice to either party, (2) it states a clear and specific reconvening time in the order and the time interval between the two hearings was reasonably brief; or (3) the order does not determine all the issues." *Senner v. Senner*, 161 N.C. App. 78, 81, 587 S.E.2d 675, 677 (2003) (citations omitted).  If the custody order fails to meet any of the three prongs, it is considered permanent. *Peters v. Pennington*, 210 N.C. App. 1, 14, 707 S.E.2d 724, 734 (2011) (citation omitted).  However, "a trial court's designation of an order as 'temporary' or 'permanent' is neither dispositive nor binding on an appellate court." *Woodring v. Woodring*, 227 N.C. App. 638, 643, 745 S.E.2d 13, 18 (2013) (citation omitted).

"An order is entered without prejudice if it is entered without loss of any rights; [and] in a way that does not harm or cancel the legal rights or privileges of a party." *Marsh v. Marsh*, 259 N.C. App. 567, 570, 816 S.E.2d 529, 532 (2018) (citations and internal quotations omitted).  This Court has held that the inclusion of the express

language "without prejudice" is sufficient for an order to be deemed as temporary. *LaValley v. LaValley*, 151 N.C. App. 290, 292, 564 S.E.2d 913, 915 (2002). Neither the January Consent Order nor Modified Consent Order contained the language indicating they were entered "without prejudice."

Despite the exclusion of this language, Plaintiff contends it is clear from the language of the January Custody Order and the circumstances under which it was entered that the trial court and the parties intended it to be entered without the loss of rights or otherwise prejudicial to either party. Plaintiff cites *Marsh* to support his argument. In *Marsh,* this Court held that an order was temporary, even without the express language, because "it [was] clear from the plain language of the order that it was entered without the loss of rights, or otherwise prejudicial to the legal rights of either party." *Marsh*, 259 N.C. App. at 571, 816 S.E.2d at 532. In that case, the order included language such as "will not be binding on the parties in future hearings" and "pending further orders of the Court." *Id.* at 570, 816 S.E.2d at 532.

It is clear from the plain language of the January Consent Order that it was entered without prejudice, therefore the first prong under *Senner* is met. *Senner*, 161 N.C. App. at 81, 587 S.E.2d at 677 (citations omitted). The January Consent Order is titled "Temporary Consent Order" with "Temporary" and "Consent" handwritten. The findings of fact include "[t]he parties announced to the court during the temporary hearing they agreed to a temporary order." Further, it states that Defendant "shall have temporary primary custody" and Plaintiff "shall have

temporary secondary custody." Finally, it states "[t]his is a temporary order." Further, the parties reiterated the January Consent Order was temporary when they entered the Modified Consent Order which states the "Temporary Consent Order entered on January 31, 2019, shall be modified as follows."

We conclude that the language in the January Consent Order is sufficient to find that the order was entered without prejudice to the rights of either party. Despite the order not explicitly stating it was entered "without prejudice," "it is clear from the plain language of the order that it was entered without the loss of rights." *Marsh*, 250 N.C. App. at 571, 816 S.E.2d at 532. Therefore, we hold the January Consent Order was a temporary custody order.

**B. Permanency Through Operation of Time**

Next, Plaintiff argues the trial court erred when it concluded that the January Consent Order and the Modified Consent Order "became a Permanent Order by acquiescence. Neither the Plaintiff nor the Defendant filed Motions for Hearing or Review for this Order to be received by the Court for a period of no less than 18 months." Whether a temporary order converted into a permanent order through time or acquiescence is reviewed *de novo. Eddington v. Lamb*, 260 N.C. App. 526, 529, 818 S.E.2d 350, 353 (2018) (citations omitted). "A temporary custody order may become permanent by operation of time, when neither party sets the matter for a hearing within a reasonable time[.]" *Id.* (citations and internal quotations omitted). Thus, the focus is on whether a hearing was requested, rather than if it was heard, as "[a] party

should not lose the benefit of a temporary order if she is making every effort to have the case tried but cannot get it heard." *LaValley*, 151 N.C. App. at 292-93 n.5, 564 S.E.2d at 915 n.5.

Since "a reasonable period of time must be addressed on a case-by-case basis" we are guided by the previous holdings of this Court and the facts in the current case. *Id.* at 293 n.6, 564 S.E.2d at 915 n.6. In *LaValley*, this Court held that the temporary order became permanent as twenty-three months was not a reasonable time to forgo seeking a hearing on permanent custody and there were no issues left unresolved. *Id.* at 292-293, 564 S.E.2d at 915. In *Woodring,* this court held that a period of twelve months was not unreasonable because "the parties were before the court at least three times in the intervening period between the entry of the temporary order and the scheduled permanent custody hearing." *Woodring*, 227 N.C. App. at 644, 745 S.E.2d at 19. In *Senner*, a twenty-month delay was held reasonable as the record contained evidence that the parties were negotiating a new custody arrangement during the relevant period. *Senner*, 161 N.C. App. at 81. 587 S.E.2d at 677.

In this case, the trial court's conclusion that neither party filed requests for a period of no less than eighteen months is unsupported by the evidence. The January Consent Order was entered on 31 January 2019, the Modified Consent Order was entered 17 April 2019, and Plaintiff filed a calendar request and notice for hearing on the issue of custody on 7 October 2019. On 2 December 2019, Plaintiff filed a calendar request and notice for hearing on the issue of Christmas visitation. The hearings

were rescheduled through a series of continuance orders for reasons including the COVID-19 pandemic, withdrawal of Plaintiff's attorney, retirement of Plaintiff's subsequent attorney and not being reached by the court. In its 18 January 2019 consent order, the trial court had ordered the parties to participate in a mediated settlement conference; however, the mediation did not take place until 23 January 2020 and ended in an impasse leaving the issues of "child support" and "final custody" to be determined at trial. Following mediation, Plaintiff filed a series of calendar requests and notices for a hearing on custody: On 21 August 2020, set for the 31 August – 4 September 2020 session; On 3 September 2020, set for the 14 – 18 September 2020 session; On 21 September 2020, set for the 19 – 23 October 2020 session.

Between the entry of the January Consent Order and Plaintiff's 7 October 2019 calendar request, less than nine months elapsed. Approximately seven months elapsed from the completion of the court-ordered mediation to August 2020 when Plaintiff's attorney filed another calendar request and notice of hearing. As "the relevant time period starts when a temporary order is entered and ends when a party requests the matter be set for hearing, not when the hearing is held", we hold that the period of nine months is not unreasonable. *Lamb*, 260 N.C. App. at 529, 818 S.E.2d at 353 (citation omitted). The record does not support the trial court's calculation of an eighteen-month period of inaction. The record reflects that Plaintiff was actively seeking court hearings on the issue of custody, including permanent

custody and visitation, following the entry of the January Consent Order. Therefore, the temporary order did not become permanent by operation of time through acquiescence.

## IV.    Conclusion

The January Consent Order, and its subsequent modification, was a temporary order when it was entered, and because at least one of the parties sought a permanent hearing within a reasonable time, it did not become a permanent order by operation of time through acquiescence. Accordingly, we reverse the October 2022 Order finding that the January Consent Order and Modified Consent Order became a permanent order and remand to the trial court for a hearing on permanent custody.

REVERSED AND REMANDED.

Judges CARPENTER and GORE concur.