IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-486

Filed 17 December 2024

Lincoln County, No. 18 CVD 147

KURT LUDACK, Plaintiff/Father,

v.

CHRISTINA LUDACK, Defendant/Mother.

Appeal by Father from order entered 16 November 2023 by Judge K. Dean Black in Lincoln County District Court. Heard in the Court of Appeals 22 October 2024.

*The Jonas Law Firm, P.L.L.C., by Rebecca J. Yoder, for Plaintiff-Appellant.*

*Christina Lee Ludack, pro se Defendant-Appellee.*

GRIFFIN, Judge.

Plaintiff Kurt Ludack ("Father") appeals from the trial court's order granting Defendant Christina Ludack ("Mother") and Father joint legal and physical custody of their minor child. Father contends the trial court (1) failed to make sufficient, statutorily required findings of fact to support its custody determination; (2) entered its written custody order after a prejudicially long delay; and (3) did not consider whether the temporary custody order became permanent as an operation of time. We remand to the trial court for the sole purpose of considering whether the temporary custody order became permanent.

## I. Factual and Procedural Background

Father and Mother were married from 2012 to 2019, and one child was born to the marriage, Arisa.[1]  Father and Mother separated in 2017.  On 6 February 2018, Father filed a complaint for child custody, and later amended it to include a claim for equitable distribution.  On 5 March 2018, Father and Mother entered into a Temporary Custody Consent Order (the "Temporary Order"), under which each would have legal and physical custody of Arisa.  The Temporary Order established a rotating "2-2-3" equal custody schedule whereby Arisa would stay with parent A for two days, then stay with parent B for two days, then return to parent A for three days, and then restart and continue the pattern.

Father and Mother divorced in September 2019, but did not resolve permanent custody of Arisa at that time.

On 20 August 2020, Mother filed a notice of hearing on permanent child custody.  On 3 September 2020, the trial court held a hearing on the permanent custody of Arisa and a pending motion for contempt.  Between September 2020 and September 2023, the parties repeatedly returned to court on motions for contempt for a party's failure to adhere to the Temporary Order.

Over three years after the permanent custody hearing, Mother filed a notice of hearing for entry of a written permanent custody order.  The trial court held the

---

[1] We use a pseudonym for ease of reading and to protect the identity of the juvenile.  *See* N.C. R. App. P. 42(b).

hearing on 29 September 2023 to discuss entry of the order, but the trial court did not endeavor to collect additional evidence at that time.

On 16 November 2023, the trial court entered a written Permanent Child Custody Order (the "Permanent Order"), granting joint legal and physical custody of Arisa to Father and Mother, but establishing a new custody schedule. The Permanent Order determined Arisa would attend school in the district where Mother lived, that Father would have custody of Arisa every other week from Thursday to Sunday, and Mother would have custody all other times.

Father timely appeals.

## II.    Analysis

Father contends the trial court erred because the court failed to make statutorily required findings of fact to support its custody determination, and because the Permanent Order was entered after a prejudicially long delay. Father also asserts the Permanent Order did not address whether the Temporary Order became permanent by operation of time.

### A. Required Findings of Fact

Father's first argument does not challenge the substance of any of the trial court's findings, but rather contends they are insufficient to satisfy the court's statutory duty to make sufficient findings of fact. Following a child custody hearing, the trial court is statutorily required to enter a written order determining child

custody, including written findings of fact that reflect its consideration of factors relevant to the child's safety and the best interest of the child:

> In making [its child custody] determination, the court shall consider all relevant factors including acts of domestic violence between the parties, the safety of the child, and the safety of either party from domestic violence by the other party. An order for custody must include written findings of fact that reflect the consideration of each of these factors and that support the determination of what is in the best interest of the child.

N.C. Gen. Stat. § 50-13.2(a) (2023). "The requirement for appropriately detailed findings is . . . not a mere formality or a rule of empty ritual; it is designed instead to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system." *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980) (citations and internal marks omitted).

Father contends this case is analogous to, and controlled by, our decisions in *Aguilar v. Mayen*, 293 N.C. App. 474, 901 S.E.2d 662 (2024), and *Montgomery v. Montgomery*, 32 N.C. App. 154, 231 S.E.2d 26 (1977), where this Court vacated custody orders because they failed to make required findings of fact in compliance with section 50-13.2(a). In *Aguilar*, the trial court entered a written order granting sole custody to the mother based upon two findings of fact, total:

> 3. That the minor child has been well cared for through her life, solely by Mother for the first year of her life, then jointly by the Mother, Father, and Father's wife for the next 6 months.
>
> 4. That it would be in the minor child's best interest that

- 4 -

> her care, custody and control be placed with the Mother
> with the Father having substantial visitation.

*Aguilar*, 293 N.C. App. at 479, 901 S.E.2d at 666. Our Court held, even though the trial court's two findings were supported by the evidence presented and "[t]he transcript [was] replete with evidence from which findings could be made," the two findings were nonetheless insufficient to show the trial court followed section 50-13.2(a)'s mandate to make written findings as to its consideration of all relevant factors. *Id.* at 482, 901 S.E.2d at 668. The Court vacated and remanded the custody order for sufficient findings of fact. *Id.*

In *Montgomery*, the trial court entered a written order granting sole custody to the father following a total of five findings of fact:

> IV. Based upon the greater weight of the evidence, the finding of fact is that at and during the time of separation the wife herein . . . was hospitalized and by necessity the husband . . . had the custody of the two (2) minor children and moved from Stokes County to Forsyth County.
>
> V. That the wife . . . has now recovered from her illness and is fully capable of caring for the children properly and is a fit and proper person to provide to wholesome home life that is conducive to the well-being of the minor children.
>
> VI. The father has cared for the children during his former wife's illness and it is found as a fact that this has been satisfactory for the welfare of the children.
>
> VII. Both children are regular in their attendance of school and the boy has made satisfactory progress in his school work and activities; the girl is an exceptional student and her school work has been highly satisfactory.

> VIII. It was admitted by both parents during testimony that each was a fit and proper person to have custody of the children.

*Montgomery*, 32 N.C. App. at 156, 231 S.E.2d at 28. This Court vacated and remanded the order, explaining only that the order "contain[ed] no findings . . . which support the award of custody . . . to [the father]." *Id.* at 158–59, 231 S.E.2d at 29.

*Aguilar* and *Montgomery* are distinguishable from the present case. In *Aguilar*, the two findings established a single fact—that all parties adequately cared for the minor child—which was insufficient to support a grant of sole custody to one parent. *Aguilar*, 293 N.C. App. at 482, 901 S.E.2d at 668. In *Montgomery*, the trial court's five findings summarily expressed the same, singular sentiment—that the mother and the father were appropriate and able caregivers for the minor child—and were likewise held insufficient. *Montgomery*, 32 N.C. App. at 157, 231 S.E.2d at 29.

The trial court, here, made a total of nineteen findings of fact in its Permanent Order. The first six findings establish the court's jurisdiction and the terms of the Temporary Order. The court then laid out thirteen findings regarding Mother and Father's current fitness to have custody of Arisa:

> 7. Father has a loving relationship with [Arisa] and spends time with [Arisa] doing outdoor activities. Father is also involved in [Arisa's] studies and helps her with her homework.
>
> 8. Mother has a loving relationship with the minor child and spends time with the minor child cooking and doing other fun activities. Mother is involved in the minor child's studies and helps her with her homework.

9.    Father has a three-bedroom home he bought in Huntersville through a BA loan, stating he knew someone who knew the owner.  He is employed at Sid Harveys in Charlotte, works both at his office and at home, and sometimes takes [Arisa] with him to work.  He earns $50,000.00 per year.

10.    Mother is employed with SPC Mechanical as a Property Manager at Charlotte Convention Center where she has a flexible work schedule and is off work every Friday and frequently works from home.

11.    Mother lives in a three-bedroom home with her two children.  [Arisa] has her own room and enjoys an excellent relationship with her half-brother who is an honor roll student at Balls Creek Elementary.

12.    [Arisa] has her own room at Father's residence and has age-appropriate toys.

13.    Father and [Arisa] enjoy camping trips in the camper, building "forts" in her bedroom, playing in a pool, and going to birthday parties.  [Arisa] enjoys riding her bicycle.  She has friends near his home.

14.    [Father] felt it was not in [Arisa's] best interest to go to Balls Creek Elementary due to his online research of school rankings from a website called "schooldigger.com." That website ranked Balls Creek Elementary School in the top 25% of all elementary schools in North Carolina and ranked Grand Oak Elementary in the top 6% of all elementary schools in North Carolina.

15.    [Father] also looked at Lincoln Center as a possible school because he thought it was a good school and it was halfway between his new home in Huntersville and Mother's home in Sherill's Ford.

16.    [Arisa] is now enrolled at Balls Creek Elementary School.  Mother's son, [Arisa's] step-brother, currently

attends Balls Creek.

17.  On a typical non-working day, Mother gets up between 5 and 5:30 a.m., does some chores and starts a big breakfast.  They live at the lake and do a lot of water activities like fishing, swimming, tubing, boating, and kayaking.  [Arisa] likes reading, playing with her Barbies, walking to the community dock, riding her bicycle, and riding her electric scooter.  She has friends in her neighborhood that she plays with.

18.  Mother had a good support group.  Her parents live five minutes away and help her with her children.  They do a lot of activities together.

19.  The parties are fit, proper and suitable persons to have joint physical and legal custody of [Arisa] and it is in [Arisa's] best interest to award joint legal and physical custody of [Arisa] to Mother and Father.

The court then made two substantive conclusions of law: (1) that it is in [Arisa's] best interest for Mother and Father to share joint legal and physical custody; and (2) that it is in [Arisa's] best interest to attend Balls Creek Elementary School, and to thereafter attend schools in the same school district.

The trial court's findings of fact show that it considered factors relevant to Arisa's safety and express substantive considerations beyond whether the parties are simply appropriate and able caregivers, and we can properly review its findings and conclusions on appeal.  The findings reflect (1) each parent's personal relationship with Arisa; (2) each parent's ability to financially provide for Arisa; (3) each parent's housing circumstances; (4) the amount of time and kinds of activities each parent usually has with Arisa; and (5) each parent's ability to spend time with Arisa with

respect to their work schedule. The record evidence does not show any indication that these parties have a history of domestic violence.

Notably, it is apparent from the record before this court and from the language of the trial court's findings and conclusions of law that a focally relevant issue to be resolved by the child custody proceedings was which school Arisa would attend. Four of the trial court's findings reference Arisa's school placement and the evidence presented by each party concerning her school's fitness. The court's findings show it considered and weighed Arisa's current placement at Balls Creek Elementary, that her step-brother also attends Balls Creek, and Father's research of school ratings, and determined that it would be in Arisa's best interest to remain in the school district covering Balls Creek. Its conclusion that it is in Arisa's best interest to be in Mother's physical custody during the school-week rationally follows therefrom.

## B. Prejudicial Delay in Entry of Order

Father also contends the trial court erred because there was a prejudicial, thirty-eight-month delay between the permanent custody hearing and the entry of its written Permanent Order.

There are no general, statutorily prescribed timeliness requirements for the entry of written orders following civil proceedings. Likewise, neither our legislature nor our Courts have spoken specifically to the timeliness of written orders following child custody proceedings under section 50-13.2. However, our Courts have ruled on

this issue in the similar context of written orders on child custody determinations following termination of parental rights hearings. We find these rulings instructive.

In the context of child custody determinations rendered from termination of parental rights proceedings, it is statutorily mandated that the trial court's child custody determination "be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing." N.C. Gen. Stat. § 7B-1110 (2023). Our Courts have repeatedly addressed the question of prejudicial delay in the entry of orders pursuant to section 7B-1110. Initially, the Courts developed a rule whereby the length of the delay would be weighed against the practical, prejudicial effects the delay caused on the case, with any delay of six months or more often being held prejudicial. *See In re T.H.T.*, 362 N.C. 446, 451, 665 S.E.2d 54, 57 (2008) (discussing prior appellate prejudicial delay jurisprudence). However, beginning in 2008, our Supreme Court held that vacating or reversing an order solely based upon prejudicial delay, a matter collateral to the substance of the order and its underlying proceedings, is not a proper remedy. *Id.* at 452–53, 665 S.E.2d at 58–59. Our Supreme Court in *T.H.T.* reasoned that "[w]hen the integrity of the trial court's decision is not in question, a new hearing serves no purpose, but only 'compounds the delay[.]'" *Id.* at 453, 665 S.E.2d at 59 (citation omitted).

Rather, the *T.H.T.* Court held, "[m]andamus is the proper remedy when the trial court fails to hold a hearing or enter an order as required by statute" and "is an appropriate and more timely alternative than an appeal." *Id.* at 454, 455, 665 S.E.2d

at 59, 60. The Court further explained that "the availability of the remedy of mandamus ensures that the parties remain actively engaged in the district court process and do not 'sit back' and rely upon an appeal to cure all wrongs." *Id.* at 455, 665 S.E.2d at 60. Our Courts have since declined to reverse or vacate section 7B-1110 orders solely on the grounds of the trial court's prejudicial delay, instead requiring that the party have taken some actions to expedite entry of the order at the trial court level. *See Matter of C.R.L.*, 377 N.C. 24, 28, 855 S.E.2d 495, 498 (2021) (overruling prejudicial delay argument where the father did not move for writ of mandamus during trial court's thirty-three-month delay in entering order pursuant to section 7B-1110).

We hold that the same rule should apply in the present context. If a party would like to hold the court accountable to its statutory duty to enter a written order under section 50-13.2(a), and impose timeliness, the proper remedy is not to argue prejudicial delay for the first time on appeal. Rather, the party should file a writ of mandamus, or employ another method of requesting the court act, in the trial court. Though there is no statutorily mandated deadline for the entry of orders under section 50-13.2(a), the resulting custody determinations have similar effect on the child and the ultimate determination turns on the same cornerstone, qualitative principle: the best interest of the child at the time of the hearing. *See* N.C. Gen. Stat. § 50-13.2(a); N.C. Gen. Stat. § 7B-1110. Further, our legislature chose not to mandate

any timeliness requirement for written orders under section 50-13.2; it would be illogical to implement a stricter standard of prejudicial delay in this context.

Here, the trial court conducted an evidentiary hearing on child custody on 3 September 2020. The court then entered its written Permanent Order based on the circumstances existing in 2020 on 16 November 2023. The record is unclear specifically what proceedings and motions may have occurred during the thirty-eight-month delay, but it does show the parties came before the court multiple times. Despite these appearances, neither party addressed the court's delay until Mother finally moved for a hearing to request the trial court enter its written order after approximately thirty-six months. Either party could have made this motion at an earlier time. If either party had desired the court to enter its written order in a timelier manner, it should have moved for a hearing on entry of the order or filed a writ of mandamus at the trial court level.

## C. Conversion of Child Custody Orders

Lastly, Father contends the Temporary Order may have become a permanent custody order by operation of time. "'A temporary custody order may become permanent by operation of time, when neither party sets the matter for a hearing within a reasonable time[.]'" *Lawrence v. Lawrence*, ___ N.C. App. ___, ___, 903 S.E.2d 374, 380 (2024) (quoting *Eddington v. Lamb*, 260 N.C. App. 526, 529, 818 S.E.2d 350, 353 (2018)). What constitutes a reasonable time is a fact-specific question to be assessed on a case-by-case basis. *See LaValley v. LaValley*, 151 N.C. App. 290,

293 n.6, 564 S.E.2d 913, 915 n.6 (2002). While modification of a temporary custody order requires only an assessment of the best interests of the child, modification of a permanent custody order requires the movant to also show a substantial change of circumstances warranting modification. *Id.* at 292, 564 S.E.2d at 914–15.

Here, the Temporary Order was entered in March 2018 and Mother moved to calendar a hearing for permanent custody in August 2020, about twenty-five months later. *See LaValley*, 151 N.C. App. at 293, 564 S.E.2d at 915 (holding that a twenty-three-month delay between entry of the temporary custody order and a party's motion to calendar a permanent custody hearing was not reasonable). The Permanent Order does not include a finding reflecting whether the trial court considered the effect of the parties' delay in moving for entry of a permanent custody order on the status of the Temporary Order. We remand to the trial court for a hearing solely to determine whether the Temporary Order became permanent by operation of time, and, if so, whether Mother presented evidence of a substantial change of circumstances.

## III.    Conclusion

We hold the trial court's findings of fact were sufficient to comply with N.C. Gen. Stat. § 50-13.2(a), and that its thirty-eight-month delay in entering a written order after the 3 September 2020 hearing was not an unfairly prejudicial delay. We vacate the Permanent Order and remand to the trial court for a hearing on the sole issue of whether the Temporary Order was converted to a permanent order by operation of time.

VACATED AND REMANDED.

Judges ZACHARY and ARROWOOD concur.